Before:    Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank, Humphreys,
           Clements, Felton, Kelsey, McClanahan and Senior Judge Annunziata[*]
Argued at Richmond, Virginia


ANGELA M. HODGES

                                                                OPINION BY
v.        Record No. 2182-03-3                        JUDGE ELIZABETH A. McCLANAHAN
                                                              FEBRUARY 15, 2005
COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT
 *ex rel*. COMPTROLLER OF VIRGINIA
 *ex rel*. PHYLLIS HODGES


                         UPON REHEARING EN BANC

               FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                        James W. Updike, Jr., Judge

            David D. Beidler (Legal Aid Society of Roanoke Valley, on
            briefs), for appellant.

            Jack A. Maxwell, Special Counsel (Jerry W. Kilgore, Attorney
            General; Craig M. Burshem, Senior Assistant Attorney General;
            Beth J. Edwards, Regional Special Counsel; Alice G. Burlinson,
            Regional Special Counsel, on brief), for appellee.


        This matter comes before the Court on a rehearing *en banc* from a divided panel decision,

Hodges v. Dep't of Soc. Servs. Div. Of Child Support Enforcement, 43 Va. App. 463, 598

S.E.2d 778 (2004), decided July 13, 2004.  Angela Hodges appeals the trial court's decision

affirming an administrative support order issued by the Commonwealth of Virginia, Department

of Social Services, Division of Child Support Enforcement (DCSE), requiring reimbursement of

---

        [*] Judge Annunziata participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2004 and thereafter by her designation as a
senior judge pursuant to Code § 17.1-401.

a public assistance debt incurred on behalf of her minor child. She contends that Code

§ 63.2-1908 precludes DCSE from collecting the debt from her. Upon rehearing *en banc*, we lift

the stay of this Court's July 13, 2004 mandate. The judgment of the trial court is affirmed for the

reasons that follow.

## I. Background

Angela M. Hodges and Ronald R. Hodges are the parents of N., born in 1989. From

1990 to 1995, N. resided with her paternal grandmother, Phyllis Hodges. During that time,

Phyllis Hodges received Temporary Assistance for Needy Families (TANF) benefits from the

Department of Social Services for the care of N. Ronald Hodges reimbursed the Department of

Social Services for all but $2,860 of the TANF moneys paid for N.'s benefit. In 1995, N.

returned to Ronald and Angela Hodges' home. Angela Hodges was not then receiving any

public assistance moneys, including TANF. However, the household did receive food stamps

and Medicaid assistance for the benefit of her children.

In 2002, DCSE issued an administrative support order seeking reimbursement from

Angela Hodges for the balance of the TANF moneys paid on behalf of N. The order required

that Angela pay $65 per month toward the debt. Angela Hodges appealed the administrative

support order to the juvenile and domestic relations district court, which dismissed the order.

DCSE appealed the decision to the circuit court, which found that Code § 63.2-1908 did not bar

DCSE from collecting the debt.

## II. Analysis

On appeal, questions of statutory interpretation are reviewed *de novo* by this Court.

Issues of "pure statutory interpretation [are] the prerogative of the judiciary." Sims Wholesale

Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996). "This axiom stems

from basic principles of separation of powers. 'It is emphatically the province and duty of the

judicial department to say what the law is.'" Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 635, 593 S.E.2d 568, 571 (2004) (quoting Marbury v. Madison, 5 U.S. 137, 177 (1803)). Therefore, "we review the trial court's statutory interpretations and legal conclusions *de novo*." Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001) (citing Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998)).

Angela Hodges contends that Code § 63.2-1908 precludes DCSE from assessing or collecting a TANF debt from her because she is receiving food stamps and Medicaid for children living in her home. Code § 63.2-1908 provides:

> Any payment of public assistance money made to or for the benefit of any dependent child or children or their custodial parent creates a debt due and owing to the Department by the person or persons who are responsible for support of such children or custodial parent in an amount equal to the amount of public assistance money so paid.

When DCSE makes payments of public assistance money on behalf of the child of a noncustodial parent, under Code § 63.2-1908, the noncustodial parent becomes obligated to DCSE for the debt. Code § 63.2-1900 defines a noncustodial parent as "a responsible person who is or may be obligated under Virginia law for support of a dependent child or child's caretaker." DCSE paid TANF to Phyllis Hodges, while Angela Hodges was a noncustodial parent, on behalf of Angela Hodges' child, N. Therefore, Angela Hodges, as a person responsible for the support of N., is a parent obligated under the statute.

However, Code § 63.2-1908 includes a proviso: the debt is not to be incurred or collected from a noncustodial parent while she is receiving "public assistance moneys" for the benefit of the child.

> Debt created by an administrative support order under this section shall not be incurred by nor at any time be collected from a noncustodial parent who is the recipient of *public assistance moneys* for the benefit of minor dependent children for the period such person or persons are in such status.

(Emphasis added.) [1] Hodges contends that in Code § 63.2-1908, the term "public assistance"

means the same thing as "public assistance money." She contends that because her household

[1] We do not agree with the premises of the concurring opinion for several reasons. First, the concurrence urges the Court to decide this case on the ground that the proviso does not apply due to the trial court's finding that Hodges is "not now a noncustodial parent," a prerequisite to application of the exemption. Neither party questioned that finding, nor did they question the trial court's application or the meaning of "noncustodial parent" as it is used in Code § 63.2-1908 at the three-judge panel stage of these proceedings. See Hodges, 43 Va. App. at 467 n.1, 598 S.E.2d at 789 n.1. The Court could not have addressed the noncustodial parent issue at the panel stage because it was not made part of the "questions presented." See Cirrito v. Cirrito, 44 Va. App. 287, 309, 605 S.E.2d 268, 278 (2004) (noting that arguments not presented in the "questions presented" will not be considered (citing Rule 5A:20(c)-(e)). In an analogous context, we have held that, generally, we will not consider "additional authority on rehearing that could have been presented before the original panel." Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 124 n.1, 510 S.E.2d 255, 258 n.1 (1999) (en banc); see also Coleman v. City of Richmond, 6 Va. App. 296, 297 n.1, 368 S.E.2d 298, 300 n.1 (1988). It follows that the Court should not base its decision on grounds not raised at the panel level and not argued by either party. In short, the issue as to whether Hodges is a "noncustodial parent" has been defaulted on appeal. Therefore, we cannot agree with the "narrower grounds" upon which the concurrence rests its opinion.

Second, the concurring opinion's *sua sponte* interpretation of the meaning of "noncustodial parent" is misplaced. Code § 63.2-1900 defines "noncustodial parent" not in terms of physical custody, but as the "responsible person who is or may be obligated under Virginia law for support of a dependent child or caretaker." See also 22 VAC § 40-880-10. We are bound by the plain language of the statutory definition of "noncustodial parent." See Beck v. Shelton, 267 Va. 482, 488, 593 S.E.2d 195, 198 (2004) (holding that courts are bound by the plain meaning of statutory language).

Third, the concurring opinion interprets the phrase "for the period such person or persons are in such status," Code § 63.2-1908, as applying to both (1) a noncustodial parent, and (2) one who is receiving public assistance moneys. The concurrence states that "[I]f one of these prerequisites is not met (i.e., the individual is not a non-custodial parent or is not receiving public assistance money), then this limited exception does not apply . . . ." Such reasoning fails to properly apply the statutory definitions of "noncustodial parent" and "debt" within the context of the statutes. A "debt" is "the total unpaid support obligation established by . . . the payment of public assistance and owed by a noncustodial parent . . . ." Code § 63.2-1900. There is no statutory provision allowing Hodges to change her status from a noncustodial parent to "not a non-custodial parent" once the debt has been incurred. The only status that can change is the time period in which a debt can be incurred or the time period in which an obligation must be repaid. Therefore, the "period" to which the proviso refers is the period in which the noncustodial parent is "the recipient of public assistance moneys for the benefit of minor dependent children." Code § 63.2-1908. Immunity from paying that debt does not depend on whether the noncustodial parent takes physical custody of the child. The noncustodial parent has debt immunity only when she is receiving public assistance moneys for the benefit of her dependent child.

receives "public assistance" in the form of food stamps and Medicaid for the benefit of her children, DCSE is prohibited by the statute from collecting the outstanding TANF debt.

The Virginia Code does not define "public assistance moneys." However, it does define "public assistance" to mean "Temporary Assistance for Needy Families (TANF); auxiliary grants to the aged, blind and disabled; medical assistance; energy assistance; food stamps; employment services; child care; and general relief." Code § 63.2-100. In some parts of Code § 63.2-1908, the legislature used the phrase "public assistance," and in other parts it used the phrase, "public assistance moneys." The question then becomes what the legislature meant by the phrases "public assistance" and "public assistance moneys" in the same statute. The General Assembly is presumed to have given the two different phrases two different meanings. "'When the General Assembly uses two different terms in the same act, it is presumed to mean two different things.'" Klarfeld v. Salsbury, 233 Va. 277, 284-85, 355 S.E.2d 319, 323 (1987) (quoting Forst v. Rockingham Poultry Marketing Coop., Inc., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981)); see also Morris v. Va. Retirement Sys., 28 Va. App. 799, 805-06, 508 S.E.2d 925, 928 (1999) ("Had the legislature intended that the phrases 'any payments' . . . and 'periodic payments for disability or death' . . . [in the same statute] meant the same thing, they would have used the same terms.").

Clearly, Code § 63.2-100 defines food stamps and Medicaid as "public assistance." However, that does not make them "public assistance *moneys*." If the legislature intended to include all forms of public assistance as defined by Code § 63.2-100, it would have only used the phrase "public assistance" in Code § 63.2-1908. If we interpret the phrase "public assistance moneys" to mean all forms of public assistance, the word "moneys" would add nothing to the term "public assistance" and would be deprived of any effect. The word "moneys" would be rendered superfluous. The Virginia Supreme Court has long held that "[w]hen analyzing a

- 5 -

statute, we must assume that 'the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute.'" City of Va. Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting Barr v. Town and Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)); see also Huffman v. Kite, 198 Va. 196, 199, 93 S.E.2d 328, 330 (1956); Frazier v. Commonwealth, 27 Va. App. 131, 135, 497 S.E.2d 879, 881 (1998). Virginia courts are bound, where possible, to give meaning to every word of a statute. See, e.g., Monument Assocs. v. Arlington County Bd., 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991); Baker v. Commonwealth, 28 Va. App. 306, 504 S.E.2d 394 (1998). "It is the duty of the courts to give effect, if possible, to every word of the written law." Moyer v. Commonwealth, 33 Va. App. 8, 35, 531 S.E.2d 580, 593 (2000). A word or clause contained in a statute may only be rejected as surplusage if it "appears to have been inserted through inadvertence or mistake, and which is incapable of any sensible meaning," or is otherwise repugnant to the rest of the statute. Burnette v. Commonwealth, 194 Va. 785, 788-89, 75 S.E.2d 482, 485 (1953). "[N]o part of an act should be treated as meaningless unless absolutely necessary." Garrison v. First Fed. Savings and Loan Ass'n of S.C., 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991) (citing Raven Red Ash Coal Corp. v. Absher, 153 Va. 332, 335, 149 S.E. 541, 542 (1929)). Therefore, to ensure that the word "moneys" in the phrase "public assistance moneys" is given meaning, its definition must exclude food stamps and Medicaid assistance. "It is a well established rule of construction that a statute ought to be interpreted in such a manner that it may have effect, and not found to be vain and elusive." Barnett v. D.L. Bromwell, Inc., 6 Va. App. 30, 34, 366 S.E.2d 271, 273 (1988) (*en banc*) (quoting McFadden v. McNorton, 193 Va. 455, 461, 69 S.E.2d 445, 449 (1952)). "We must assume that the legislature did not intend to do a vain and useless thing." Williams v. Commonwealth, 190 Va. 280, 293, 56 S.E.2d 537, 543 (1949).

Some forms of public assistance are provided as cash transfers and others are not. [2] Virginia TANF is defined as a program in which a "relative can receive monthly cash assistance for the support of his eligible children." Code § 63.2-100; see also 42 U.S.C. § 601 (providing that the purpose of TANF is to "provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives"). On the other hand, some forms of public assistance are provided as non-cash transfers for specific goods and/or services. "The food stamp program allows qualified stores to accept food stamps instead of cash for certain food items. The store can then redeem the stamps for their cash value." Traficanti v. United States, 227 F.3d 170, 174 (4th Cir. 2000) (citing 7 U.S.C. § 2011 et seq.). "Coupons issued to eligible households shall be used by them only to purchase food in retail food stores which have been approved for participation in the food stamp program at prices prevailing in such stores." 7 U.S.C. § 2016(b).[3] "Coupons issued and used as provided in [the Food Stamp Act are] redeemable [by the retail food stores] at face value by the Secretary [of Agriculture] through the facilities of the Treasury of the United States." 7 U.S.C. § 2013. Medicaid consists of reimbursements from the Department of Medical Assistance Services directly to medical

---

[2] "Cash" in this context should also be understood to include other forms of universally accepted fungible currency, such as checks. The dissent charges that we have "adopted the most narrow and restrictive meaning of the word 'moneys,' in disregard of the 'everyday, ordinary' meaning of the word in the context of the legislature's intent." But, in fact, the definition used by the dissent supports our analysis. The dissent relies on the definition of "money[s]" from Black's Law Dictionary 1021 (7th ed. 1999): "assets that can easily be converted to cash." That meaning requires fungibility. As we point out below, food stamps and Medicaid assistance are not fungible, nor are they assets that can legally be converted to cash. Therefore, we do not agree that our meaning of moneys ignores the "everyday, ordinary" understanding of the word.

[3] 7 U.S.C. § 2024(b) details the fines and prison terms that may be levied against an individual convicted of the unauthorized use, transfer, acquisition, alteration, or possession of food stamp coupons or authorization cards. Buying or selling food stamps for any purpose other than that provided in 7 U.S.C § 2011 et seq., which is anything other than the sale or purchase of eligible food items from approved retail food stores, is an unauthorized use. See, e.g., Kim v. United States, 121 F.3d 1269 (9th Cir. 1997).

- 7 -

providers for eligible services they render to eligible patients. See generally 12 VAC 30; Code §§ 32.1-310, -325. Recipients do not receive the benefit in any form other than services provided. The difference between TANF, food stamps and Medicaid is that the latter two forms of public assistance entail transfers to third parties. Neither food stamps nor Medicaid assistance consist of a fungible payment to the recipients. These forms of assistance are for goods or services supplied by third-party providers who are approved by the respective program administrators. The payments are then made to the third-party providers by government agencies.

The only other court that has addressed this specific issue has held that food stamps and medical benefits are not "public assistance moneys." In Dep't of Soc. and Health Services v. Gerlack, 612 P.2d 382 (Wash. Ct. App. 1980), a Washington appeals court interpreted a Washington statute almost identical to the Virginia statute at issue. It concluded that "public assistance moneys" had to denote something different from "public assistance," "because each word of a statute is to be given significance." Id. at 385 (citation omitted). The relevant facts in Gerlack were almost identical to those in the instant case. [4]

In addition, the United States Court of Appeals for the Ninth Circuit has held that food stamps are not "public assistance payments." Siemens v. Bergland, 591 F.2d 1263, 1264 (9th Cir. 1978). In the Siemens case, recipients of payments under a Comprehensive Employment and Training Act (CETA) program wanted the Secretary of Agriculture to include weekly CETA program payments in calculating their incomes for the purposes of food stamp eligibility.

---

[4] The Washington statute at issue read, in relevant part, that "the payment of public assistance moneys for the benefit of a dependent child created a debt owed to the state by those parents responsible for the child's support," and, "[d]ebt under this section shall not be incurred by nor at any time be collected from a parent or other person who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status." Gerlack, 621 P.2d at 384, 384 n.2. That statute has since been amended. See Wash. Rev. Code §§ 74.20A.030 & 74.20A.270 (2004).

However, a CETA statute provided that the weekly payments were to be "disregarded in determining the amount of public assistance payments under Federal or Federally assisted public assistance programs." Id. (citing 29 U.S.C. § 821(a)). If food stamps were "public assistance payments," then the Secretary could not include the CETA payments in the income calculations. If food stamps were not "public assistance payments," the statute did not prohibit the Secretary from including the payments as income. The Court held that "food stamps are not 'public assistance payments' as defined in the CETA statute . . . ." Id.

If food stamps and Medicaid are included in the Virginia statutory phrase "public assistance moneys," as Hodges urges, Code § 63.2-1908 would then also mean that DCSE could collect from a noncustodial parent the amount of food stamps and Medicaid expended on behalf of his/her child. The first sentence of Code § 63.2-1908 states,

> Any payment of *public assistance money* made to or for the benefit of any dependent child or children or their custodial parent creates a debt due and owing to the Department by the person or persons who are responsible for support of such children or custodial parent in an amount equal to the amount of *public assistance money* so paid.

(Emphasis added.) In fact, if "public assistance moneys" includes food stamps and Medicaid payments, then DCSE would have a statutory obligation to collect the amount of those forms of public assistance expended on behalf of the dependent child from the noncustodial parent. Otherwise, the exact term, "public assistance moneys," would be given a different meaning in the same statute. In the first sentence, "public assistance moneys" would mean "TANF payments," and in the second to last sentence of the statute, the proviso at issue in this appeal, "public assistance moneys" would mean "TANF payments, food stamps and Medicaid assistance." Considered as a whole, the legislature could not have possibly intended to assign

- 9 -

two different meanings to the phrase "public assistance moneys" in the same statute.[5] If the

plain meanings of the words are adopted, it must be presumed that the legislature intended to

give separate meanings to the phrases "public assistance" and "public assistance moneys" and

did not intend merely to incorporate superfluous language. See Burnette, 194 Va. at 788-89, 75

S.E.2d at 484-85.[6]

---

[5] We also note that the second and third sentences of Code § 63.2-1908 support the interpretation that the phrase "public assistance moneys" does not include food stamps and Medicaid assistance. If food stamps and/or Medicaid assistance are being received for the benefit of a child in the household who is not receiving TANF payments, the parent is not obligated to pay back the amount of the food stamps/Medicaid assistance. The obligation created is only for the amount of moneys paid, i.e., TANF payments or other types of cash assistance. Those sentences state,

> However, if a custodial parent receives TANF payments for some of the custodial parent's dependent children pursuant to § 63.2-604, the custodial parent shall receive the total amount of support collected for the children for whom no TANF benefits are received. Such support payments shall not create a debt due and owing to the Department and the value of such payments shall not be counted as income for purposes of TANF eligibility and grant determination.

Moreover, if the intent of the proviso is, as Hodges asserts, to prevent the state from collecting *any* welfare debt from families with limited financial resources, the legislature would not allow DCSE to offset child support payments from the noncustodial parent against the public assistance moneys being paid. DCSE is not permitted to keep child support payments for children who are not receiving TANF or other cash assistance, even if food stamps and/or Medicaid assistance is being paid for their benefit.

[6] The dissent contends that the meaning of § 63.2-1908 should be ascertained by viewing it in relation to Code §§ 63.2-1909 and -1910. While those statutes fall successively under Subtitle V, Administrative Child Support, Title 19, Child Support Enforcement, Article 2, Public Assistance, they are not part of a larger "act." But cf., Moreno v. Moreno, 24 Va. App. 190, 197, 480 S.E.2d 792, 796 (1997) ("When the General Assembly uses different terms in the same *act*, it is presumed to mean different things. . . . 'In construing a statute the court should seek to discover the intention of the legislature as ascertained *from the act itself* when read in the light of other statutes relating to the same subject matter.'" (quoting Campbell v. Commonwealth, 13 Va. App. 33, 38, 409 S.E.2d 21, 24 (1991) (emphasis added))).

In any event, if you apply Code § 63.2-1909 to our analysis, the treatment of the phrases "public assistance" and "public assistance moneys" is consistent with our interpretation of those phrases. Code § 63.2-1909 states that anyone who receives public assistance on behalf of a child is deemed to have assigned to DCSE any rights to any support payments up to the amount of

Defining the phrase to include TANF payments, as opposed to TANF payments, food

stamps and Medicaid, provides consistency and gives meaning to every word and phrase within

the statute. "When analyzing a statute, we must assume that 'the legislature chose, with care, the

words it used when it enacted the relevant statute, and we are bound by those words as we

---

public assistance *moneys* expended. It also allows DCSE to collect any outstanding support obligation from a noncustodial parent up to the amount of *moneys* expended on behalf of a child until that debt is repaid. The debt consists of the amount of *moneys* expended, not the amount of assistance provided.

In addition, although the statutes all concern obligations created as a result of the payment of federally funded public assistance moneys on behalf of a child, the subject matter of each statute is different. Code § 63.2-1908 addresses TANF debt; Code § 63.2-1909 addresses the assignment of child support obligations; and Code § 63.2-1910 addresses foster care maintenance payments debt. The Federal code requires states receiving Federal TANF block grants to include a process for an assignment of support rights as a condition of providing assistance to a family. 42 U.S.C. § 608(a)(3); see generally 42 U.S.C. § 601 *et seq*. Support rights secured by a state as a condition for receiving TANF assistance (pursuant to Title IV, Part A of the Social Security Act) or on behalf of a child receiving foster care maintenance payments (pursuant to Title IV, Part E of the Social Security Act) creates an obligation in the person responsible for supporting the child. 42 U.S.C. § 656(a)(1). Such obligations are to be collected by the state, 42 U.S.C. § 656; however, the federal government does not prescribe the process under which those obligations are to be collected. 42 U.S.C. § 617. Because the Commonwealth is required by the federal government to collect debt created by TANF/support payments and foster care maintenance payments, the General Assembly enacted statutes to meet those federal requirements. In doing so, the legislature enacted separate statutes for purposes of collecting TANF/support debt, Code § 63.2-1908, and foster care maintenance payments, Code § 63.2-1910. The legislature could have elected to enact one statute to cover both types of debt. However, it chose to treat TANF/support debt separately, and differently, from foster care maintenance payments debt. In the case of TANF, the legislature allows the noncustodial parent an exemption from paying back the debt while she is receiving money payments on behalf of the child. In the case of foster care maintenance payments, the legislature allows the noncustodial parent an exemption while she is receiving any kind of public assistance for the benefit of the child. Without enumerating them, we note that the eligibility requirements for receiving TANF assistance and the eligibility requirements for receiving foster care maintenance payments are different. Therefore, the intent of the legislature may have been to treat the collection of the different types of debt under each program differently. There is no requirement, federal or otherwise, that the General Assembly enact congruent provisos in the two statutes.

Simply put, in each of the statutes, Code §§ 63.2-1908, -1909, and -1910, if any kind of public assistance is provided on behalf of a child, the noncustodial parent must pay back *moneys* expended for the benefit of the child, unless the noncustodial parent is exempted. We must presume that the legislature chose its words with care and that each of the words has a specific meaning and is not superfluous. ESG Enters., Inc., 243 Va. at 153, 413 S.E.2d at 644; Burnette, 194 Va. at 788-89, 75 S.E.2d at 485.

interpret the statute.'" Frazier, 27 Va. App. at 135, 497 S.E.2d at 881 (quoting ESG Enters., Inc., 243 Va. at 153, 413 S.E.2d at 644). When the statutory language is clear and unambiguous, then the Court "must give the words their plain meaning." Crislip v. Commonwealth, 37 Va. App. 66, 71, 554 S.E.2d 96, 98 (2001). "'Courts are not permitted to rewrite statutes. This is a legislative function.'" Barr, 240 Va. at 295, 396 S.E.2d at 674 (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)). "'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Crislip, 37 Va. App. at 71-72, 554 S.E.2d at 98 (quoting Dominion Trust Co. v. Kenbridge Constr., 248 Va. 393, 396, 448 S.E.2d 659, 660 (1994)). Moreover,

> "[i]f the comparison of one clause with the rest of the statute makes a certain proposition clear and undoubted, the act must be construed accordingly and ought to be so construed as to make it a consistent whole. If after all it turns out that that cannot be done, the construction that produces the greatest harmony and the least inconsistency is that which ought to prevail."

Norman J. Singer, Statutes and Statutory Construction § 46:05 (6th ed. 2000) (quoting Att'y Gen. v. Sillem, 2 H&C 432, 159 Eng. Repr. 178 (1864)). Interpreting the phrase "public assistance moneys" throughout the statute to exclude food stamps and Medicaid assistance provides the greatest harmony and the least inconsistency.

### III. Conclusion

We hold that food stamps and Medicaid assistance are not "public assistance moneys" as contemplated in Code § 63.2-1908. The legislature did not exempt noncustodial parents receiving those forms of public assistance from reimbursing DCSE for moneys expended on behalf of their children. Accordingly, we affirm.

Affirmed.

Humphreys, J., concurring in result.

I concur in the plurality's decision to affirm the judgment of the trial court in this case, but I write separately because I believe the case can and should be decided on narrower grounds. Because I believe that both the plurality and dissenters are vying to issue what, on this record, can be nothing but an advisory opinion, I do not join in the analysis of either Judge McClanahan or Judge Elder and would leave for another day the issue of whether food stamps are equivalent to "public assistance moneys." Cf. Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) (declining the appellant's invitation "to render an advisory opinion on a moot question based upon speculative facts," reasoning that "courts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative," and concluding that the court would instead "await the arrival of a case in which" the issue was properly presented).

Under Code § 63.2-1908,

> [a]ny payment of public assistance money made to or for the benefit of any dependent child or children . . . creates a debt due and owing to the Department by the person or persons who are responsible for support of such children . . . in an amount equal to the amount of public assistance money so paid.

Thus, where TANF funds are distributed for the benefit of a minor child, the person "responsible" for supporting that child incurs a debt and is obligated to repay the Department an amount equivalent to the funds distributed. Here, Hodges does not argue that she was not "responsible" for supporting her child, nor does she argue that no TANF debt was incurred.

Code § 63.2-1908 also provides that: "Debt created by an administrative support order shall not be . . . collected from a *noncustodial parent* who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status." (Emphasis added). Thus, to qualify for this limited statutory reprieve, the

- 13 -

individual must be both: (1) a non-custodial parent, (2) who is receiving public assistance moneys. If one of these prerequisites is not met (i.e., the individual is not a non-custodial parent or is not receiving public assistance money), then this limited exception does not apply, and the Department is free to pursue the individual for any debt that might be owed.[7]

Here, Hodges is contending that this statutory exception should apply because she is currently receiving public assistance moneys in the form of food stamps and Medicaid. The plurality has rejected her argument, holding that food stamps and Medicaid are not equivalent to "public assistance moneys." However, I would hold that the statutory exception my colleagues seek to interpret does not apply in this case because the trial court expressly found that Hodges is "not now a noncustodial parent." Hodges has not appealed this factual finding.[8] Thus, because Hodges is not currently a "noncustodial parent," the statutory exemption does not apply, regardless of whether she is currently receiving public assistance moneys.

Hodges argues on appeal that the parties have implicitly, if not directly, agreed that she is a non-custodial parent. However, where the parties fail to appeal a finding of fact, that finding becomes conclusive and binding on this Court. See, e.g., Tran v. Gwinn, 262 Va. 572, 582, 554 S.E.2d 63, 69 (2001). The parties simply cannot dispose of an issue on appeal by rewriting the

---

[7] Code § 63.2-1908 also provides that a parent will not incur a TANF debt during the period of time that she is both: (1) a non-custodial parent, and (2) receiving public assistance moneys. So, for example, if Hodges had received public assistance moneys while the child was living with her grandmother, there would have been no TANF debt to collect.

[8] Hodges did object to the trial court's final order on the ground that she "believes that she is a non-custodial parent." Although Hodges asserts that the "Question Presented" in her opening brief encompasses this issue, she did not include it in her initial assignments of error to this Court. Thus, we are barred from considering it. See Mengel v. Commonwealth, 37 Va. App. 676, 679, 561 S.E.2d 21, 22 (2002) (noting that, "on appeal, we will consider only those arguments presented in the petition for appeal and granted by this Court" (internal quotations omitted)); see also Cirrito v. Cirrito, 44 Va. App. 287, 309, 605 S.E.2d 268, 278 (2004).

trial court's findings of fact – they may as easily agree that the sky is green, but such an agreement would hardly make it so.

Moreover, the trial court's finding that Hodges is "not now a noncustodial parent" is supported by evidence in the record. The resolution of this issue necessitates an inquiry into who, exactly, is a "noncustodial parent" within the meaning of the statute. Because I am of the opinion that a "noncustodial parent" is not necessarily equivalent to an "obligor parent," I believe the trial court correctly found that Hodges – although an obligor parent – is "not now a noncustodial parent."

"Noncustodial parent" is defined as a "responsible person who is or may be obligated under Virginia law for support of a dependent child or child's caretaker." Code § 63.2-1900; see also 22 VAC 40-880-10. Although the current statute does not define "responsible person," former Code § 63.1-250 defined "responsible person" as "any obligor or person obligated under Virginia law for support of a dependent child or the child's caretaker." See 22 VAC 40-880-10 (defining "non-custodial parent" and incorporating by reference definition of "responsible person" from "Code § 63.1-250"). Because a "responsible person" encompasses "any obligor *or person*," a non-custodial parent is, therefore, "any 'obligor *or person*' who is or may be obligated under Virginia law for support of a dependent child or child's caretaker."

Both the plurality and the dissent suggest that a "noncustodial parent" is merely an obligor, or a parent who has already incurred a TANF debt. However, the definition of "noncustodial parent" does not specifically incorporate the phrase "obligor," instead using the term "responsible person." And, as noted above, a "responsible person" is "any obligor *or person* obligated under Virginia law for support of a dependent child or the child's caretaker." Code § 63.1-250 (repealed effective Oct. 1, 2002) (emphasis added). A "responsible person," then, is not necessarily an "obligor." As a result, a "noncustodial parent" might be, but is not

necessarily, an obligor. See, e.g., Smith v. Commonwealth, 17 Va. App. 37, 40, 434 S.E.2d 914, 915 (1993) ("While certain conduct might be construed to fall within the definitions of both "use" and "display," the two words are not synonymous. The definition of neither necessarily includes the definition of the other."). Thus, I cannot agree that "noncustodial" is synonymous with "obligor."

This conclusion is further supported by the fact that the General Assembly defined "obligor" separately from, and more broadly than, "noncustodial parent." See Code § 63.2-1900. And, as the plurality and dissent correctly point out, "[w]hen the General Assembly uses two different terms in the same act, it is presumed to mean two different things," Forst v. Rockingham Poultry Mktg. Coop., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981), and "no part of an act should be treated as meaningless unless absolutely necessary," Garrison v. First Fed. Sav. & Loan Assoc., 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991). Thus, the terms "noncustodial" and "obligor" cannot be read interchangeably, but must instead be given separate and distinct meanings. See Indus. Dev. Auth. v. Bd. of Supervisors, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002) ("When the General Assembly uses two different terms in the same act, those terms are presumed to have distinct and different meanings.").

Moreover, "[i]n interpreting a statute, we 'assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" Dep't of Med. Assistance Servs. v. Beverly Healthcare, 41 Va. App. 468, 493-94, 585 S.E.2d 858, 871 (2003) (quoting City of Virginia Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992)) (internal quotations omitted), aff'd, 268 Va. 278, 601 S.E.2d 604 (2004). Here, had the General Assembly intended for the statutory exception contained in Code § 63.2-1908 to apply to "obligor" parents who are receiving public assistance money, it presumably would have used the term "obligor" – which is defined and used

throughout the statute – rather than the term "noncustodial."  Interposing "obligor" in Code § 63.2-1908 in place of "noncustodial" would effectively rewrite the statutory provision – a task suited for the legislature, not this Court.  See Barr v. Town & Country Props., Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) ("'Courts are not permitted to rewrite statutes.  This is a legislative function.'" (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944))).

In my view, then, the statutory definition of "noncustodial parent" encompasses any person who "is or may be obligated under Virginia law for support of a dependent child."[9] Under Virginia law, *all* parents owe a duty of support to their children, with the exception of parents whose parental rights have been terminated through adoption or another formal legal proceeding.  See, e.g., Featherstone v. Brooks, 220 Va. 443, 448, 258 S.E.2d 513, 516 (1979) ("Both parents of a child owe that child a duty of support during minority.").  Accordingly, to give effect to the adjective "non-custodial," I believe this statutory definition must be read in conjunction with the phrase "custodial parent," which is defined as "the natural or adoptive parent with whom the child resides; a stepparent or other person who has physical custody of the child and with whom the child resides; or a local board that has legal custody of a child in foster care."  Code § 63.2-1900; see also Dep't of Med. Assistance Servs. v. Beverly Healthcare, 268 Va. 278, 285, 601 S.E.2d 604, 608 (2004) ("[T]he various parts of [a] statute should be harmonized so that, if practicable, each is given a sensible and intelligent effect.").  Thus, if a

---

[9] Compare Code § 63.2-1900 (defining "noncustodial parent" as "a *responsible person* who is or may be obligated under Virginia law for support of a dependent child or child's caretaker" (emphases added)); with 22 VAC 40-880-10 (defining "non-custodial parent" and incorporating by reference the definition of "responsible person" contained in "Code § 63.1-250"); and Code § 63.1-250 (repealed effective Oct. 1, 2002) (defining "responsible person" as "any obligor *or person* obligated under Virginia law for support of a dependent child or child's caretaker" (emphasis added)).

- 17 -

parent is obligated under Virginia law to support a child, but does not otherwise fall within the definition of "custodial parent," that parent is "noncustodial" within the meaning of the statute.

In the parties' written statement of facts, they jointly assert that the child "returned to [Hodges'] home in 1995 and has continued to reside in the home with [Hodges] and her younger sibling." This statement clearly supports the trial court's conclusion that Hodges is "not now a noncustodial parent." That is, because the child currently "reside[s]" with Hodges, her natural parent, Hodges is a "custodial parent" within the meaning of the statute. See Code § 63.2-1900 (defining "custodial parent" as, *inter alia*, a "natural . . . parent with whom the child *resides* (emphasis added)). And, because Hodges is a "custodial parent," she is, as the trial court found, "not *now* a noncustodial parent." (Emphasis added).

Accordingly, I do not believe that we either need to or should reach the issue of whether Hodges' receipt of food stamps and Medicaid qualify her as an individual who is "receiving public assistance moneys" within the meaning of the statute. Rather, because Hodges is not a non-custodial parent, the limited exemption contained in Code § 63.2-1908 simply does not apply.

For these reasons, I would affirm the judgment of the trial court, and I therefore concur in the result reached by the plurality.

Elder, J., with whom Fitzpatrick, C.J., Benton, Annunziata and Felton, JJ., join, dissenting.

A majority of six members of this Court agree to affirm the judgment of the trial court permitting the Department of Social Services (DSS) to recover from Angela Hodges (appellant) payments of Temporary Assistance for Needy Families (TANF). These judges agree that the exemption from repayment set out in paragraph 4 of Code § 63.2-1908 does not apply under the facts of this case. However, they disagree over why the exemption is inapplicable.

The first paragraph of Code § 63.2-1908 provides in relevant part as follows:

> Any payment of public assistance money made to or for the benefit of any dependent child or children or their custodial parent creates a debt due and owing to the [State] Department [of Social Services (DSS)] by the person or persons who are responsible for support of such children or custodial parent in an amount equal to the amount of public assistance money so paid.

See Code § 63.2-100 (defining "Department"). The fourth paragraph of Code § 63.2-1908 contains the following proviso:

> Debt created by an administrative support order under this section shall not be incurred by nor at any time be collected from a noncustodial parent who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status.

Judge Humphreys interprets the exemption as requiring a finding that the person seeking to block repayment "must be both: (1) a non-custodial parent [and] (2) . . . receiving public assistance moneys." He concludes the trial court's finding that appellant is "not now a noncustodial parent" was unappealed and now compels the conclusion that the exemption does not apply, obviating the need to consider the second requirement for the exemption, that the individual must be "receiving public assistance money."

In their separate plurality opinion, the remaining five members of the majority conclude appellant was a "noncustodial parent" within the meaning of Code § 63.2-1908. They reject Judge Humphreys' reasoning and reach the second part of the Code § 63.2-1908 repayment

- 19 -

exemption, which requires consideration of the scope of the terms "public assistance" and "public assistance money."

Like the five-judge plurality, I reject Judge Humphreys' conclusion that the trial judge's statement--that appellant is "not now a noncustodial parent"--standing alone, compels the conclusion that the Code § 63.2-1908 repayment exemption does not apply. Like the five-judge plurality, I believe the procedural posture of this case requires us to consider the scope of the terms "public assistance" and "public assistance money" as used in Code § 63.2-1908. However, I disagree with the plurality's interpretation of the term "public assistance money" as used in Code § 63.2-1908. I would hold the legislature intended the meaning of that term in Code § 63.2-1908 to be coextensive with the term, "public assistance," as defined in Code § 63.2-100. I believe an examination of these terms as used in Code § 63.2-1908 and related statutes reveals that this interpretation is the only one that yields consistent results. Thus, I respectfully dissent from the majority's decision to affirm the ruling of the trial court.

I.

"NONCUSTODIAL PARENT" UNDER CODE § 63.2-1908

The trial court found appellant is "not now a noncustodial parent." However, it permitted DSS to recover the debt from her under Code § 63.2-1908. Assuming we are bound by the trial court's finding that appellant is "not now a noncustodial parent," we must interpret that finding in the context of its ruling *permitting* DSS to recover the debt.

On appeal, a ruling is entitled to a presumption of correctness; a trial court is presumed to have known and properly applied the law, absent clear evidence to the contrary. See Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); Oliver v. Commonwealth, 35 Va. App. 286, 297, 544 S.E.2d 870, 875 (2001). Applying this principle to the trial court's ruling permitting DSS to recover the debt from appellant, we are compelled to conclude the court

- 20 -

determined that, *at the time the debt was incurred*, appellant was, in fact, a "noncustodial parent" within the meaning of Code § 63.2-1908, defined in Code § 63.2-1900 merely as an "obligor," "a responsible person who is or may be obligated under Virginia law for support of a dependent child." Viewed in this context, we are compelled to conclude the trial court's finding that appellant is "not now a noncustodial parent" means simply that, *at the time of the collection efforts*, appellant was a "custodial parent," defined in Code § 63.2-1900 as, *inter alia*, "the natural or adoptive parent with whom the child resides."

Accordingly, I believe the decision of ten members of this Court to consider the scope of the terms "public assistance" and "public assistance money" is proper.

II.

## "PUBLIC ASSISTANCE" AND "PUBLIC ASSISTANCE MONEY" UNDER CODE § 63.2-1908

Code § 63.2-100 defines "public assistance" as "Temporary Assistance for Needy Families (TANF); auxiliary grants to the aged, blind and disabled; medical assistance; energy assistance; food stamps; employment services; child care; and general relief." Code § 63.2-1908 refers not only to "public assistance" but also to "public assistance money" and "public assistance moneys." Examining the usage of these terms in Code § 63.2-1908, the plurality concludes that "public assistance moneys" include only those types of fungible "public assistance" paid, by cash or check, directly to the person receiving the aid, such as TANF, and not sums paid to third parties on behalf of the person entitled to aid, such as through the food stamp and Medicaid programs. By construing the word "money[s]" so narrowly as to include only direct transfers by cash or check, the plurality disregards the ordinary meaning of the word "money" in the modern world of business and government and fails to give effect to the intent of the legislature.

- 21 -

Here, the obvious intent of the legislature in enacting the part of Code § 63.2-1908 under review was to relieve a noncustodial parent of having to repay a debt created by an administrative support order during such time that the parent "is the recipient of public assistance moneys for the benefit of minor dependent children." As appellant noted, "the obvious reason for the statutory exception to assessment and collection is to prohibit the Commonwealth from depleting the extremely limited financial resources of families with children as needing and receiving public assistance." The legislature merely acknowledged the unfairness of collecting from the noncustodial parent, during the time that the parent is receiving "public assistance moneys for the benefit of minor dependent children," a debt for TANF benefits previously paid. Here, the public assistance moneys being paid for the minor dependent children were food stamps and Medicaid benefits. Public policy does not condone taking "public assistance moneys" paid to a parent for a minor dependent child, during the time the parent is receiving such benefits, to repay other public assistance funds previously paid on behalf of that parent.

The plurality has adopted the most narrow and restrictive meaning of the word "moneys," in disregard of the everyday, ordinary meaning of the word in the context of the legislature's intent. Black's Law Dictionary 1021 (7th ed. 1999), defines "money[s]" as "assets that can easily be converted to cash." Webster's Unabridged Dictionary 1160 (2d ed. 1983), variously defines "money[s]" as "any substance or article used as money, as bank notes, checks, etc." and as "property, possessions, wealth." This broader definition of "money[s]" was clearly what the legislature intended by enacting Code § 63.2-1908 and is the only construction that achieves a reasonable and meaningful result, especially when viewed in light of the way the terms "public assistance" and "public assistance money" are used in Code §§ 63.2-1909 and -1910.

Code § 63.2-1910[10] applies to foster care expenditures and creates a debt owed to the local department of social services, similar to the one owed to DSS as provided for in Code § 63.2-1908, for any "payment . . . for room, board, and social services for a child in the custody of the local department or [designated] public agency." Code § 63.2-1910 contains a proviso almost identical to the one in paragraph 4 of Code § 63.2-1908, stating as follows:

> Debts created by an administrative support order under this section shall not be incurred by nor at any time collected from a noncustodial parent who is the recipient of *public assistance* for the benefit of minor dependent children for the period such person is in such status.

(Emphasis added). These portions of the two code sections are identical in key respects except that Code § 63.2-1908 refers to "public assistance *moneys*" whereas Code § 63.2-1910 refers only to "public assistance."

I agree with the general principles of statutory construction set out in the plurality opinion that "[w]hen the General Assembly uses two different terms in the same act, it is presumed to mean two different things," Forst v. Rockingham Poultry Mktg. Coop., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981), and that "no part of an act should be treated as meaningless unless absolutely necessary," Garrison v. First Fed. Sav. & Loan Assoc., 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991). However, settled principles of statutory construction also provide that

> Proper construction seeks to harmonize the provisions of a statute both internally *and in relation to other statutes*. . . . [L]egislative purpose can best be "'ascertained from [a particular statute] when read in light of other statutes relating to the same subject matter.'" Moreno v. Moreno, 24 Va. App. 190, 197, 480 S.E.2d 792, 796 (1997) (citation omitted). The doctrine of *pari materia* teaches that "'statutes are not to be considered as isolated fragments of

---

[10] Appellant specifically mentioned Code § 63.2-1910 on brief on appeal. Whether appellant cited this statute in the trial court or on appeal is irrelevant to our ability to consider it in interpreting Code § 63.2-1908. Lash v. County of Henrico, 14 Va. App. 926, 929, 421 S.E.2d 851, 853 (1992) (en banc) (noting that Rule 5A:18 "does not prohibit reliance on statutes or cases not presented to the trial court to support, on appeal, a position otherwise adequately presented at trial").

law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement.'" Id. at 198, 480 S.E.2d at 796 (citation omitted).

DMV v. Wallace, 29 Va. App. 228, 233-34, 511 S.E.2d 423, 425 (1999) (citation omitted) (first emphasis added).

Under the plurality's interpretation of "public assistance money," a noncustodial parent receiving food stamps or Medicaid payments but not TANF payments would not be responsible under Code § 63.2-1910, while receiving such benefits, for paying back "[a]ny [foster care] payment made by a local department . . . for room, board, and social services"; however, such a parent would, nevertheless, be responsible under Code § 63.2-1908 for paying DSS back for any TANF payments previously received. I would hold that in light of the clear meaning of Code § 63.2-1910, such a construction of Code § 63.2-1908 fails to give proper consideration to the parallel language of Code § 63.2-1910 and would lead to an incongruous result.

Further, in Code § 63.2-1909, the General Assembly used these terms--"public assistance," "public assistance money," and "public assistance moneys"--in a seemingly interchangeable fashion. That code section provides as follows:

> By accepting public assistance for or on behalf of a child or children, the recipient shall be deemed to have made an assignment to the Department of any and all right, title, and interest in any support obligation and arrearages owed to or for such child or children or custodial parent up to the amount of public assistance money paid for or on behalf of such child or children or custodial parent for such term of time as such public assistance moneys are paid; provided, however, that the Department may thereafter continue to collect any outstanding support obligation or arrearage owed to the Department as a result of such assignment up to the amount of public assistance money paid for or on behalf of such child or children or custodial parent which has not been paid by the noncustodial parent. The recipient shall also be deemed, without the necessity of signing any document, to have appointed the Commissioner as his or her true and lawful attorney-in-fact to act in his or her name, place, and stead to perform the specific act of endorsing any and all drafts, checks, money orders or other negotiable instruments representing support payments which are

received on behalf of such child or children or custodial parent as reimbursement for the public assistance moneys previously paid to such recipient.

Applying the plurality's definition of "public assistance moneys," Code § 63.2-1909 would permit DSS to seek reimbursement only for TANF benefits and other payments made by cash or check and not for benefits paid to third parties, such as food stamps or Medicaid. Had the General Assembly intended to limit recoupment to the amount of moneys actually paid to the recipient, it would have had no need to mention all "public assistance" in the first portion of Code § 63.2-1909. Thus, the most logical interpretation of Code § 63.2-1909, especially when read in *pari materia* with Code §§ 63.2-1908 and -1910, is that the General Assembly used interchangeably the terms "public assistance," which it defined in the code, and "public assistance money" and "moneys," which it did not separately define.

### III.

For these reasons, I respectfully dissent from the majority's decision to affirm the ruling of the trial court.

Tuesday                                                   10th

August, 2004.


Angela M. Hodges,                                                           Appellant,

 against            Record No. 2182-03-3
                    Circuit Court No. CH03020866-00

Commonwealth of Virginia,
  Department of Social Services,
  Division of Child Support Enforcement,
  *ex rel*. Comptroller of Virginia,
  *ex rel*. Phyllis Hodges,                                                 Appellees.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata, Bumgardner,
Frank, Humphreys, Clements, Felton, Kelsey and McClanahan


On July 27, 2004 came the appellant, by counsel, and filed a petition praying that the Court set

aside the judgment rendered herein on July 13, 2004, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered

herein on July 13, 2004 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated

on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellant shall attach as an

addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellant shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


ANGELA M. HODGES

                                                    OPINION BY
v.        Record No. 2182-03-3        JUDGE ELIZABETH A. McCLANAHAN
                                                    JULY 13, 2004
COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT,
 *ex rel.* COMPTROLLER OF VIRGINIA,
 *ex rel.* PHYLLIS HODGES


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

David D. Beidler (Legal Aid Society of Roanoke Valley, on briefs),
for appellant.

Jack A. Maxwell, Special Counsel (Jerry W. Kilgore,
Attorney General; Craig M. Burshem, Senior Assistant Attorney
General; Beth J. Edwards, Regional Special Counsel; Alice G. Burlinson,
Regional Special Counsel, on brief), for appellee.


Angela Hodges appeals a circuit court order affirming an administrative support order

issued by the Commonwealth of Virginia, Department of Social Services, Division of Child

Support Enforcement (DCSE), requiring reimbursement of a public assistance debt incurred on

behalf of her minor child.  She contends that Code § 63.2-1908 precludes DCSE from assessing

the debt against her.  For the reasons that follow, we affirm the trial court.

I.  Background

Angela M. Hodges and Ronald R. Hodges are the parents of N., born in 1989.  From

1990 to 1995, N. resided with her paternal grandmother, Phyllis Hodges.  During that time,

Phyllis Hodges received Temporary Assistance for Needy Families (TANF) benefits from the

Department of Social Services for the care of N. Ronald Hodges reimbursed the Department of Social Services for all but $2,860 of the TANF monies paid for N's benefit. In 1995, N. returned to her parents' home and continues to reside there.

In 2002, DCSE issued an administrative support order seeking reimbursement from Angela Hodges for the balance of the TANF moneys paid on behalf of N. The order allowed for a payment of $65 per month for each of the months TANF benefits were received for N.

Angela Hodges is not currently receiving any public assistance moneys, including TANF. However, the household does receive food stamps in the form of an electronic benefit card, and Medicaid assistance for the benefit of the children.

Angela Hodges appealed the administrative support order to the juvenile and domestic relations district court, which dismissed the order. DCSE appealed the decision to the circuit court, which found that the code section did not bar DCSE from collecting the debt.[11] This appeal followed.

## II. Analysis

On appeal, questions of statutory interpretation are reviewed *de novo* by this Court. Issues of "pure statutory interpretation [are] the prerogative of the judiciary." Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996). "This axiom stems from basic principles of separation of powers. 'It is emphatically the province and duty of the judicial department to say what the law is.'" Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 635, 593 S.E.2d 568, 571 (2004) (quoting Marbury v. Madison, 5 U.S. 1 (1 Cranch) 137, 177 (1803)). Therefore, "we review the trial court's statutory interpretations and legal conclusions *de*

---

[11] The trial court also found that Angela Hodges was not a noncustodial parent as contemplated in Code § 63.2-1908, but appellant does not appeal that part of the trial court's finding.

*novo*."  Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001) (citing

Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998)).

Code § 63.2-1908 provides that payment of public assistance money for a child

constitutes a debt to DCSE by noncustodial parents.  In pertinent part, the statute states:

> Debt created by an administrative support order under this section
> shall not be incurred by nor at any time be collected from a
> noncustodial parent who is the recipient of public assistance
> moneys for the benefit of minor dependent children for the period
> such person or persons are in such status.

The issue in this appeal is simply whether, in the context of the statute, the term "public

assistance moneys" includes food stamps and Medicaid assistance.  The appellant contends that

because her household receives these two forms of public assistance for the benefit of her

children DCSE is prohibited by the statute from collecting the outstanding TANF debt.

"In construing statutes, courts are charged with ascertaining and giving effect to the intent

of the legislature."  Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346

(1997) (citing City of Winchester v. American Woodmark Corp., 250 Va. 451, 457, 464 S.E.2d

148, 152 (1995)).  In Code § 63.2-1908, the legislature chose to use the phrase "public assistance

moneys" rather than simply "public assistance."  In some parts of the statute, the phrase "public

assistance" is used; in other parts, "public assistance moneys" is used.  The question then

becomes what the legislature meant by including the word "moneys."

"It is a basic rule of statutory construction that a word in a statute is to be given its

everyday, ordinary meaning unless the word is a word of art."  Stein v. Commonwealth, 12

Va. App. 65, 69, 402 S.E.2d 238, 241 (1991) (citing Lovisi v. Commonwealth, 212 Va. 848, 850,

188 S.E.2d 206, 208, cert. denied, 407 U.S. 922 (1972)).  The ordinary use of the word money,

or moneys in plural, is cash or currency.  See Black's Law Dictionary 695 (abridged 6th ed.

1991) (defining money as "coins and paper currency used as circulating medium of exchange").

Money, including forms other than cash or currency (i.e. checks, debit cards, credit cards), is a medium of exchange that is universally accepted across the country for the purpose of purchasing, or paying for, a wide variety of commodities, which includes both goods and services. In the two code sections of the Act where the legislature used the words "public assistance moneys," Code §§ 63.2-1908 and 63.2-1909, it is placed in the context of a payment, or money being paid.

"Proper construction seeks to harmonize the provisions of a statute both internally, and in relation to other statutes." Commonwealth v. Wallace, 29 Va. App. 228, 233, 511 S.E.2d 423, 425 (1999). In Wallace this Court wrote:

> The words chosen by the legislature in drafting a statute derive meaning from both definition and context and, therefore, we divine legislative intent by construing an enactment as a whole, together with companion statutes, if any. The legal maxim, *noscitur a sociis*, instructs that "a word takes color and expression from the purport of the entire phrase of which it is a part, and . . . must be read in harmony with its context." Turner v. Commonwealth, 226 Va. 456, 460, 309 S.E.2d 337, 339 (1983). Similarly, legislative purpose can best be "'ascertained from the act itself when read in the light of other statutes relating to the same subject matter.'" Moreno v. Moreno, 24 Va. App. 190, 197, 480 S.E.2d 792, 796 (1997). The doctrine of *pari materia* teaches that "'statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement.'" Id. at 198, 480 S.E.2d at 796.

Id. at 233-34, 511 S.E.2d at 425.

Some forms of public assistance are provided as cash transfers[12] and others are not. Code § 63.2-100 provides definitions for some of the applicable terms. "Public assistance" is defined as "Temporary Assistance for Needy Families (TANF); auxiliary grants to the aged, blind and disabled; medical assistance; energy assistance; food stamps; employment services; child care;

---

[12] "Cash" in this context should also be understood to include other forms of universally accepted currency, such as checks.

and general relief." TANF is defined as a program in which a "relative can receive monthly cash assistance for the support of his eligible children." Code § 63.2-100. On the other hand, food stamps are distributed in the form of coupons or an electronic benefit card in order to obtain nutritional food (see 7 U.S.C. § 2011 et seq. (2004)). Food stamps are food-only assistance and by law are not to be used to purchase or pay for anything other than foodstuffs that are approved by the food stamp program. Medicaid consists of reimbursements to medical providers for eligible services they have rendered to eligible patients (see, e.g., Code § 32.1-310). Neither food stamps nor Medicaid assistance provide a cash payment to the recipients that allows them to use that benefit to purchase or pay for goods or services other than those approved by the respective programs. In the case of Medicaid, recipients do not receive the benefit directly. The government pays the medical providers directly.

If the legislature intended to include all forms of public assistance as defined by Code § 63.2-100, it would have only used the phrase "public assistance." To interpret the phrase "public assistance moneys" to mean all forms of public assistance, the word "moneys" would add nothing to the term "public assistance" and would be deprived of any effect. The word "moneys" would be rendered superfluous.

The Virginia Supreme Court has long held that "when analyzing a statute, we must assume that 'the legislature chose with care, the words it used . . . and we are bound by those words when we interpret the statute.'" City of Virginia Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting Barr v. Town and Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)); see also Huffman v. Kite, 198 Va. 196, 199, 93 S.E.2d 328, 330-31 (1956); Frazier v. Commonwealth, 27 Va. App. 131, 135, 497 S.E.2d 879, 881 (1998). Virginia courts are bound, where possible, to give meaning to every word of a statute. See, e.g., Monument Assoc. v. Arlington County Bd., 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991);

- 5 -

Baker v. Commonwealth, 28 Va. App. 306, 504 S.E.2d 394 (1998). A word or clause contained in a statute may only be rejected as surplusage if it "appears to have been inserted through inadvertence or mistake, and which is incapable of any sensible meaning," or is otherwise repugnant to the rest of the statute. Burnette v. Commonwealth, 194 Va. 785, 788-89, 75 S.E.2d 482, 484-85 (1953). "[N]o part of an act should be treated as meaningless unless absolutely necessary." Garrison v. First Federal Savings and Loan of South Carolina, 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991) (citing Raven Red Ash Coal Corp. v. Absher, 153 Va. 332, 335, 149 S.E. 541, 542 (1929)).

To ensure that the word "moneys" is given meaning this Court must interpret the phrase "public assistance moneys" to exclude non-monetary public assistance.

When the legislature exempted recipients of monetary public assistance from the obligation of repaying prior support, it intended to avoid a meaningless and inefficient exercise of giving money to those in need with one hand while requiring it to be paid back with the other. That would be the result if the noncustodial parent received monetary public assistance at the time DCSE sought repayment of prior public assistance. However, in the case of non-monetary support, no such result is reached. Neither food stamps, Medicaid benefits, nor other forms of non-monetary assistance, can legally be converted to cash.

The Court finds that holding recipients of non-monetary assistance subject to the obligations of Code § 63.2-1908 does not frustrate the purpose of that statute. The "public assistance moneys" exception applies only to those receiving actual monetary assistance from the Commonwealth. Food stamps and Medicaid assistance are not "public assistance moneys" as contemplated in Code § 63.2-1908. The legislature did not exempt noncustodial parents receiving those forms of public assistance from reimbursing DCSE for moneys expended on

- 6 -

behalf of their children.  As a result, Hodges does not come under the statutory exception, and, as N.'s parent, must repay the support obligation pursuant to the administrative support order.

### III.  Conclusion

Accordingly, we affirm the trial court's decision upholding the administrative support order requiring the appellant to reimburse DCSE for benefits extended on behalf of her child.

<u>Affirmed.</u>

Coleman, J., dissenting.

I agree with the majority that when we are called upon to interpret a statute we are not bound by a trial court's construction of the statute and that upon our *de novo* review and determination we are required to give "effect to the intent of the legislature." Crown Central Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997) (citing City of Winchester v. American Woodmark Corp., 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995)). Moreover, I agree with the majority that a word in a statute is to be given "its everyday, ordinary meaning unless the word is a word of art." Stein v. Commonwealth, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991) (citing Lovisi v. Commonwealth, 212 Va. 848, 850, 188 S.E.2d 206, 208 (1972)). However, by construing the word "money[s]" so narrowly as to include only "coins and paper currency" the majority disregards the "everyday, ordinary meaning" of the word "money" in the modern world of business and government and fails to give "effect to the intent of the legislature."

Here, the obvious intent of the legislature in enacting the part of Code § 63.2-1908 under review was to relieve a noncustodial parent of having to repay a debt created by an administrative support order during such time that the parent "is the recipient of public assistance moneys for the benefit of minor dependent children." As appellant noted, "the obvious reason for the statutory exception to assessment and collection is to prohibit the Commonwealth from depleting the extremely limited financial resources of families with children as needing and receiving public assistance." The legislature merely acknowledged the unfairness of collecting a debt for TANF benefits paid from the noncustodial parent during the time that the parent is receiving "public assistance moneys for the benefit of minor dependent children." Here, the public assistance moneys paid for the minor dependent children were food stamps and Medicaid benefits. In other words, public policy did not condone taking "public assistance moneys" paid

- 8 -

to a parent for a minor dependent child during the time the parent is receiving such benefits to repay other public assistance funds that were paid on behalf of the noncustodial parent.

Furthermore, in today's world I seriously doubt that any public assistance benefits or "moneys" are paid in "coins and paper currency" or cash. Proper government accounting would require that such public assistance benefits be paid by check, voucher, coupon, etc.; not by "coins or paper currency." The majority has adopted the most narrow and restrictive meaning of the word "moneys," in disregard of the "everyday, ordinary" meaning of the word in the context of the legislature's intent. Black's Law Dictionary 1021 (7th ed. 1999) defines "money[s]" as "assets that can be easily converted to cash." Webster's Unabridged Dictionary 1160 (2d ed. 1983) variously defines "money[s]" as "any substance or article used as money, as bank notes, checks, etc.;" and as "property, possessions, wealth." This broader definition of "money[s]" was clearly what the legislature intended by enacting Code § 63.2-1908 and is the only construction that achieves a reasonable and meaningful result.

For the foregoing reasons, I dissent and I would reverse the trial court's decision upholding the administrative support order.