[No. 6896–2–I.   Division One.   March 10, 1980.]

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent,* v. SHARON ANN GERLACK, ET AL, *Respondents,* PAUL EUGENE MILLER, ET AL, *Appellants.*

*George N. Apostol,* for appellants.

*Slade Gorton, Attorney General, Michael T. Mitchell, Assistant, Raymond J. Walters,* and *Nancy W. Preg,* for respondents.

DORE, J.—This case arose after Seattle Bonded, Inc., garnished Paul Miller's wages to satisfy a judgment for back child support. Such judgment had been assigned to both the bonding company and the Department of Social and Health Services (DSHS), by Sharon Gerlack. DSHS brought an action for declaratory relief to determine the parties' rights. Gerlack and DSHS obtained judgments against Paul Miller for unpaid child support. Seattle Bonded was denied its request for judgment.

Miller appeals the amount awarded to the State; Gerlack asks us to award her any sums improperly awarded to the State. Paul and Penny Miller challenge the rejection of much of their cross claim for wrongful garnishment against Seattle Bonded and its president, Clarke Weems.

## ISSUES

1. Can the State collect child support payments from Miller while he was the recipient of food stamps and medical care payments?

2. Was Miller entitled to pursue a cause of action under RCW 7.33.340?

3. Should Miller have been allowed to recover attorneys' fees under either RCW 7.33.320 or RCW 7.33.340?

4. Should an individual cause of action be allowed against the president of Seattle Bonded?

5. Was Miller entitled to a jury trial on his cross claim for wrongful garnishment?

## FACTS

On December 3, 1971, Paul Miller and Sharon Gerlack were divorced. Miller was ordered to pay child support. On July 1, 1971, Gerlack assigned for value all of her right to collect child support to DSHS while she was a recipient of public assistance. Subsequent similar assignments were made to DSHS, but one was an assignment "for collection only" to allow the State to pursue child support on her behalf when she was not receiving public assistance. On October 4, 1973, Gerlack assigned to Seattle Bonded her right to collect past due child support "for collection only."

In November 1974, DSHS discovered the assignment to Seattle Bonded and notified it of its claim to all of Miller's obligation for the period of at least January through June of 1972. In May and June of 1977, prior to the filing of this action, Seattle Bonded garnished $500 of Miller's wages.

The trial court found that Seattle Bonded could not keep any sums under its assignment because its rights were superseded by the State's. The court ordered the garnished $500 released by the clerk to DSHS to be applied against Miller's debt.

By statute, the State could not collect any funds from Miller for those months in which he received "public assistance moneys" for the benefit of minor dependent children. The trial court therefore awarded Gerlack that portion of the child support debt that arose when Miller received "public assistance moneys." During several months when Miller did not receive money for his minor dependent children, he received food stamps and medical care services. The trial court concluded that because these benefits were not "public assistance moneys" under the statute, the State could collect his child support obligation for those months.

When Seattle Bonded garnished Miller's wages, Miller was not served with a copy of the writ as required by RCW 7.33.320. The trial court awarded Miller and his present wife a judgment of $250 apiece for the mental anguish they suffered as a result of this illegal garnishment. The court refused, however, to allow Miller a cause of action for wrongful garnishment under RCW 7.33.340. The court also denied Miller's request for a jury trial and refused to award attorneys' fees as damages for the illegal garnishment. The court refused to hold Clarke Weems individually liable under RCW 7.33.320.

## DECISION

ISSUE 1: The State can collect child support from Miller during the months in which he received food stamps and medical care payments.

Prior to its amendment in 1979,[1] RCW 74.20A.030 provided that the payment of public assistance moneys for the benefit of a dependent child created a debt owed to the State by those parents responsible for the child's support. Such a debt could not be incurred, however, for the period during which the parent was "the recipient of public assistance moneys for the benefit of minor dependent children . . ."[2] Miller contends he was improperly assessed by the State for his child support obligations that arose during those months in which he received food stamps and medical assistance. He relies on *Moses v. Department of Social & Health Servs.*, 90 Wn.2d 271, 581 P.2d 152 (1978), which holds that food stamps are public assistance payments. He argues that medical payments to doctors or hospitals should be similarly treated. Gerlack joins Miller in his argument and contends that any amount found not collectable by the State should be awarded to her. *Moore v. Moore*, 20 Wn. App. 909, 583 P.2d 1249 (1978).

Our statutes do not define "public assistance moneys," but "public assistance" is defined at RCW 74.04.005(1) as

[p]ublic aid to persons in need thereof for any cause, including services, medical care, assistance grants, disbursing orders, work relief, general assistance and federal–aid assistance.

---

[1]Laws of 1971, 1st Ex. Sess., ch. 164, § 3, p. 737–38, *as amended by* Laws of 1973, 1st Ex. Sess., ch. 183, § 4, p. 1345–46, was amended in 1979. Laws of 1979, 1st Ex. Sess., ch. 171, § 4, p. 1594–95.

[2]The prior version of RCW 74.20A.030, Laws of 1971, 1st Ex. Sess., ch. 164, § 3, p. 737–38, *as amended by* Laws of 1973, 1st Ex. Sess., ch. 183, § 4, p. 1345–46, provided in relevant part as follows:

"Debt under this section shall not be incurred by nor at any time be collected from a parent or other person who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status."

RCW 74.20A.030 provides in relevant part as follows:

"No collection shall be made from a parent or other person who is the recipient of public assistance moneys while such person or persons are in such status."

This broad definition includes food stamps and medical services. "Public assistance moneys" must, however, connote something different from "public assistance" because each word of a statute is to be given significance. *Smith v. Greene,* 86 Wn.2d 363, 371, 545 P.2d 550 (1976).

To decide the intent of the legislature when it included "moneys" in the statute, it is of prime importance that we consider the purpose of the law. *Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 586 P.2d 1149 (1978). It is well established that the purpose of RCW 74.20A is to provide additional and more effective procedures for obtaining, to the extent possible, a reimbursement of state funds used to provide public assistance to the child of a natural or adoptive parent. RCW 74.20A-.010; *Taylor v. Morris,* 88 Wn. 2d 586, 589, 564 P.2d 795 (1977). As noted in *State v. Wright,* 84 Wn.2d 645, 652, 529 P.2d 453 (1974):

> Provisos operate as limitations upon or exceptions to the general terms of the statute to which they are appended and as such, generally, should be strictly construed with any doubt to be resolved in favor of the general provisions, rather than the exceptions.

The court also noted the following at page 652:

> Among the recognized rules relating to the construction of provisos is that a proviso in a statute must be construed in the light of the body of the statute, and in such a manner as to carry out the legislature's intent as manifested by the entire act and laws in pari materia therewith.

Read narrowly, the proviso requires that the defaulting parent receive "public assistance moneys" for the benefit of minor dependent children. The medical care payments are not within this proviso because the doctor or hospital, not the parent, receives the payment from the State. RCW 74.09.120; 74.09.160.

A narrow construction of the proviso also prevents considering food stamps as "public assistance moneys" because, unlike the customary use of "money," food stamps

can be lawfully used for only one type of purchase—buying food from approved retail stores. 7 U.S.C. §§ 2013, 2024(b).

These interpretations tend to advance the law's purpose of recovering state child support expenditures to the extent possible. *Taylor v. Morris, supra; State v. Wright, supra.* We are, therefore, persuaded that receipt of food stamps and medical care benefits does not bar the State from seeking reimbursement of child support under the prior version of RCW 74.20A.030.[3]

ISSUE 2: Miller was not entitled to a claim under RCW 7.33.340.

■ RCW 7.33.340[4] applies only to prejudgment garnishments and codifies the rule that such garnishment is wrongful when the plaintiff does not ultimately recover a judgment against the defendant. *See Huzzy v. Culbert Constr. Co.,* 5 Wn. App. 581, 585, 489 P.2d 749 (1971). There was no cause of action under this statute because Seattle Bonded's claim was based upon the previous recovery of a judgment for child support against Miller. While the writ of garnishment required the issuance of a judgment for back child support, each unpaid installment of child support became a separate judgment when it was due. *Sproston v. Sproston,* 8 Wn. App. 218, 219, 505 P.2d 479 (1973). Thus, the judgment for back child support already existed when Seattle Bonded sought the writ. Furthermore,

---

[3]Miller cannot rely on *Moses v. Department of Social & Health Servs., supra,* because its rationale was totally discredited in *Siemens v. Bergland,* 454 F. Supp. 463 (D.C. Cir. 1977). The Ninth Circuit Court of Appeals reversed the federal district court decision relied upon by *Moses* and explained that the Washington Supreme Court overlooked the controlling decision in *Knebel v. Hein,* 429 U.S. 288, 50 L. Ed. 2d 485, 97 S. Ct. 549 (1977).

[4]"In all actions in which a writ of garnishment has been issued by a court and served upon a garnishee, in the event judgment is not entered for the plaintiff on the claim sued upon by plaintiff, and the claim has not voluntarily been settled or otherwise satisfied, the defendant shall have an action for damages against the plaintiff. The defendant's action for damages may be brought by way of a counterclaim in the original action or in a separate action and in the action the trier of fact, in addition to other actual damages sustained by the defendant, may award him reasonable attorney's fees."

the pursuance of the writ of garnishment was ancillary to the original divorce proceeding and was not an independent action seeking a judgment. *Ace Novelty Co. v. M.W. Kasch Co.*, 82 Wn.2d 145, 508 P.2d 1365 (1973); *Hillman v. Gray*, 163 Wash. 406, 1 P.2d 318, 75 A.L.R. 1356 (1931). Even assuming *arguendo* that Seattle Bonded "failed" in its claim because it misrepresented the amount of the judgment, the prior existence of a valid judgment precludes the application of RCW 7.33.340. *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 436–37, 511 P.2d 1002 (1973).

■ Miller contends this decision creates a constitutional error. We reject this contention. Here, there was notice and an opportunity to be heard prior to entry of the child support judgment and issuance of the writ. *Cf. Olympic Forest Prods., Inc. v. Chaussee Corp., supra* (prejudgment writ unconstitutional without prior notice and opportunity for a hearing). While there was a dispute as to the total amount claimed under the judgment, such disputes can arise even when the judgment is for a fixed amount because of claimed partial or total payment. We know of no reason nor any authority to require notice and an opportunity to be heard merely on the question of the amount owed prior to the issuance of a post–judgment writ of garnishment. Such objections can be promptly raised after service of the writ. SPR 91.04W(c).[5]

ISSUE 3: Miller was not entitled to attorney's fees.

As just discussed, Miller has no cause of action under RCW 7.33.340 so no attorney's fees are available under that statute. Miller argues that attorney's fees are available under the rule in *Knight v. Bishop*, 51 Wn.2d 353, 318 P.2d

---

[5] "(c) **Objections.** The judgment debtor shall make any objections to the entry of judgment based upon the answer of a garnishee prior to the expiration of the time within which the garnishment should have been answered.
" . . .

"(f) **Applicability.** This rule shall apply to garnishments in both the superior courts and justice courts in the State of Washington and shall supplement RCW 7.33."

323 (1957), but that case involved an action to quash a garnishment issued under a *void* judgment. Here, the underlying judgment was valid.

■ The trial court granted relief under RCW 7.33.320, but that statute does not allow attorney's fees. A court cannot grant attorney's fees absent authority in a contract, a statute or a recognized ground of equity. *Stegmeier v. Everett*, 21 Wn. app. 290, 584 P.2d 488 (1978).

ISSUE 4: Miller has no cause of action against the president of Seattle Bonded.

The trial court never found the garnishment wrongful. Seattle Bonded's rights were merely found to be superseded by those held by the State. Liability was imposed for a statutory violation, but the court found insufficient evidence to prove that Seattle Bonded's president acted on his own behalf when Miller's wages were garnished. This finding was supported by substantial evidence.

■ A corporation's separate entity will be respected when its officers conscientiously keep corporate affairs separate from their personal affairs unless a fraud or manifest injustice would be perpetrated upon those dealing with the corporation. *Frigidaire Sales Corp. v. Union Properties, Inc.*, 88 Wn.2d 400, 562 P.2d 244 (1977). Under the trial court's findings, there was no basis for holding Seattle Bonded's president personally liable for the violation of RCW 7.33.320.

ISSUE 5: Miller was not entitled to a jury trial.

■ Miller contends he had a constitutional right to a jury trial to decide his damages under RCW 7.33.320. Const. art. 1, § 21; *Watkins v. Siler Logging Co.*, 9 Wn.2d 703, 116 P.2d 315 (1941); *O'Connor v. Force*, 58 Wash. 215, 108 P. 454, 109 P. 1014 (1910). Miller was entitled to a jury trial on that issue if he would have been entitled to one at the time of the adoption of Washington's constitution. *In re Marriage of Firchau*, 88 Wn.2d 109, 558 P.2d 194 (1977). RCW 7.33.320, however, was enacted by Laws of 1969, 1st Ex. Sess., ch. 264, § 32, p. 2527. There was no predecessor

550

statute. Prior to the enactment of RCW 7.33.320, no cause of action existed for the mere wrongful service of a copy of the writ of garnishment on the debtor. A wrongful service would not, standing alone, constitute an abuse of process, and Miller did not plead such an action. *See Rock v. Abrashin,* 154 Wash. 51, 280 P. 740, 65 A.L.R. 1280 (1929); *Fite v. Lee,* 11 Wn. App. 21, 521 P.2d 964 (1974). Because the claim under RCW 7.33.320 was not available at the time of the adoption of the constitution, there was no right to a jury trial on damages.

Affirmed.

SWANSON and ANDERSEN, JJ., concur.