*122 UPON REHEARING EN BANC
McCLANAHAN, Judge.
This matter comes before the Court on a rehearing en banc from a divided panel decision, Hodges v. Dep’t of Soc. Servs. Div. Of Child Support Enforcement, 43 Va.App. 463, 598 S.E.2d 778 (2004), decided July 13, 2004. Angela Hodges appeals the trial court’s decision affirming an administrative support order issued by the Commonwealth of Virginia, Department of Social Services, Division of Child Support Enforcement (DCSE), requiring reimbursement of a public assistance debt incurred on behalf of her minor child. She contends that Code § 63.2-1908 precludes DCSE from collecting the debt from her. Upon rehearing en banc, we lift the stay of this Court’s July 13, 2004 mandate. The judgment of the trial court is affirmed for the reasons that follow.
I. Background
Angela M. Hodges and Ronald R. Hodges are the parents of N., born in 1989. From 1990 to 1995, N. resided with her paternal grandmother, Phyllis Hodges. During that time, Phyllis Hodges received Temporary Assistance for Needy Families (TANF) benefits from the Department of Social Services for the care of N. Ronald Hodges reimbursed the Department of Social Services for all but $2,860 of the TANF moneys paid for N.’s benefit. In 1995, N. returned to Ronald and Angela Hodges’ home. Angela Hodges was not then receiving any public assistance moneys, including TANF. However, the household did receive food stamps and Medicaid assistance for the benefit of her children.
In 2002, DCSE issued an administrative support order seeking reimbursement from Angela Hodges for the balance of the TANF moneys paid on behalf of N. The order required that Angela pay $65 per month toward the debt. Angela *123 Hodges appealed the administrative support order to the juvenile and domestic relations district court, which dismissed the order. DCSE appealed the decision to the circuit court, which found that Code § 63.2-1908 did not bar DCSE from collecting the debt.
II. Analysis
On appeal, questions of statutory interpretation are reviewed de novo by this Court. Issues of “pure statutory interpretation [are] the prerogative of the judiciary.” Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996). “This axiom stems from basic principles of separation of powers. ‘It is emphatically the province and duty of the judicial department to say what the law is.’ ” Finnerty v. Thornton Hall, Inc., 42 Va.App. 628, 635, 593 S.E.2d 568, 571 (2004) (quoting Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803)). Therefore, “we review the trial court’s statutory interpretations and legal conclusions de novo.” Rollins v. Commonwealth, 37 Va.App. 73, 79, 554 S.E.2d 99, 102 (2001) (citing Timbers v. Commonwealth, 28 Va.App. 187, 193, 503 S.E.2d 233, 236 (1998)).
Angela Hodges contends that Code § 63.2-1908 precludes DCSE from assessing or collecting a TANF debt from her because she is receiving food stamps and Medicaid for children living in her home. Code § 63.2-1908 provides:
Any payment of public assistance money made to or for the benefit of any dependent child or children or their custodial parent creates a debt due and owing to the Department by the person or persons who are responsible for support of such children or custodial parent in an amount equal to the amount of public assistance money so paid.
When DCSE makes payments of public assistance money on behalf of the child of a noncustodial parent, under Code § 63.2-1908, the noncustodial parent becomes obligated to DCSE for the debt. Code § 63.2-1900 defines a noncustodial parent as “a responsible person who is or may be obligated under Virginia law for support of a dependent child or child’s *124 caretaker.” DCSE paid TANF to Phyllis Hodges, while Angela Hodges was a noncustodial parent, on behalf of Angela Hodges’ child, N. Therefore, Angela Hodges, as a person responsible for the support of N., is a parent obligated under the statute.
However, Code § 68.2-1908 includes a proviso: the debt is not to be incurred or collected from a noncustodial parent while she is receiving “public assistance moneys” for the benefit of the child.
Debt created by an administrative support order under this section shall not be incurred by nor at any time be collected from a noncustodial parent who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status.
(Emphasis added.)[1] Hodges contends that in Code § 63.2-1908, the term “public assistance” means the same thing as *125 “public assistance money.” She contends that because her household receives “public assistance” in the form of food stamps and Medicaid for the benefit of her children, DCSE is prohibited by the statute from collecting the outstanding TANF debt.
The Virginia Code does not define “public assistance moneys.” However, it does define “public assistance” to mean “Temporary Assistance for Needy Families (TANF); auxiliary grants to the aged, blind and disabled; medical assistance; energy assistance; food stamps; employment services; child care; and general relief.” Code § 63.2-100. In some parts of Code § 63.2-1908, the legislature used the phrase “public assistance,” and in other parts it used the phrase, “public assistance moneys.” The question then becomes what the legislature meant by the phrases “public assistance” and “pub- *126 lie assistance moneys” in the same statute. The General Assembly is presumed to have given the two different phrases two different meanings. “ “When the General Assembly uses two different terms in the same act, it is presumed to mean two different things.’” Klarfeld v. Salsbury, 233 Va. 277, 284-85, 355 S.E.2d 319, 323 (1987) (quoting Forst v. Rockingham Poultry Marketing Coop., Inc., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981)); see also Morris v. Va. Retirement Sys., 28 Va.App. 799, 805-06, 508 S.E.2d 925, 928 (1999) (“Had the legislature intended that the phrases ‘any payments’ ... and ‘periodic payments for disability or death’ ... [in the same statute] meant the same thing, they would have used the same terms.”).
Clearly, Code § 63.2-100 defines food stamps and Medicaid as “public assistance.” However, that does not make them “public assistance moneys.” If the legislature intended to include all forms of public assistance as defined by Code § 63.2-100, it would have only used the phrase “public assistance” in Code § 63.2-1908. If we interpret the phrase “public assistance moneys” to mean all forms of public assistance, the word “moneys” would add nothing to the term “public assistance” and would be deprived of any effect. The word “moneys” would be rendered superfluous. The Virginia Supreme Court has long held that “[w]hen analyzing a statute, we must assume that ‘the legislature chose, with care, the words it used ... and we are bound by those words as we interpret the statute.’ ” City of Va. Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting Barr v. Town and Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)); see also Huffman v. Kite, 198 Va. 196, 199, 93 S.E.2d 328, 330 (1956); Frazier v. Commonwealth, 27 Va.App. 131, 135, 497 S.E.2d 879, 881 (1998). Virginia courts are bound, where possible, to give meaning to every word of a statute. See, e.g., Monument Assocs. v. Arlington County Bd., 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991); Baker v. Commonwealth, 28 Va.App. 306, 504 S.E.2d 394 (1998). “It is the duty of the courts to give effect, if possible, to every word of the written law.” Moyer v. Commonwealth, 33 Va.App. 8, 35, 531 S.E.2d *127 580, 593 (2000). A word or clause contained in a statute may-only be rejected as surplusage if it “appears to have been inserted through inadvertence or mistake, and which is incapable of any sensible meaning,” or is otherwise repugnant to the rest of the statute. Burnette v. Commonwealth, 194 Va. 785, 788-89, 75 S.E.2d 482, 485 (1953). “[N]o part of an act should be treated as meaningless unless absolutely necessary.” Garrison v. First Fed. Savings and Loan Ass’n of S.C., 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991) (citing Raven Red Ash Coal Corp. v. Absher, 153 Va. 332, 335, 149 S.E. 541, 542 (1929)). Therefore, to ensure that the word “moneys” in the phrase “public assistance moneys” is given meaning, its definition must exclude food stamps and Medicaid assistance. “It is a well established rule of construction that a statute ought to be interpreted in such a manner that it may have effect, and not found to be vain and elusive.” Barnett v. D.L. Bromwell, Inc., 6 Va.App. 30, 34, 366 S.E.2d 271, 273 (1988) (en banc) (quoting McFadden v. McNorton, 193 Va. 455, 461, 69 S.E.2d 445, 449 (1952)). “We must assume that the legislature did not intend to do a vain and useless thing.” Williams v. Commonwealth, 190 Va. 280, 293, 56 S.E.2d 537, 543 (1949).
Some forms of public assistance are provided as cash transfers and others are not.[2] Virginia TANF is defined as a program in which a “relative can receive monthly cash assistance for the support of his eligible children.” Code § 63.2-100; see also 42 U.S.C. § 601 (providing that the purpose of TANF is to “provide assistance to needy families so that *128 children may be cared for in their own homes or in the homes of relatives”). On the other hand, some forms of public assistance are provided as non-cash transfers for specific goods and/or services. “The food stamp program allows qualified stores to accept food stamps instead of cash for certain food items. The store can then redeem the stamps for their cash value.” Traficanti v. United States, 227 F.3d 170, 174 (4th Cir.2000) (citing 7 U.S.C. § 2011 et seq.). “Coupons issued to eligible households shall be used by them only to purchase food in retail food stores which have been approved for participation in the food stamp program at prices prevailing in such stores.” 7 U.S.C. § 2016(b).[3] “Coupons issued and used as provided in [the Food Stamp Act are] redeemable [by the retail food stores] at face value by the Secretary [of Agriculture] through the facilities of the Treasury of the United States.” 7 U.S.C. § 2013. Medicaid consists of reimbursements from the Department of Medical Assistance Services directly to medical providers for eligible services they render to eligible patients. See generally 12 VAC 30; Code §§ 32.1-310, -325. Recipients do not receive the benefit in any form other than services provided. The difference between TANF, food stamps and Medicaid is that the latter two forms of public assistance entail transfers to third parties. Neither food stamps nor Medicaid assistance consist of a fungible payment to the recipients. These forms of assistance are for goods or services supplied by third-party providers who are approved by the respective program administrators. The payments are then made to the third-party providers by government agencies.
The only other court that has addressed this specific issue has held that food stamps and medical benefits are not “public *129 assistance moneys.” In Dep’t of Soc. and Health Services v. Gerlack, 25 Wash.App. 541, 612 P.2d 382 (1980), a Washington appeals court interpreted a Washington statute almost identical to the Virginia statute at issue. It concluded that “public assistance moneys” had to denote something different from “public assistance,” “because each word of a statute is to be given significance.” Id. at 385 (citation omitted). The relevant facts in Gerlack were almost identical to those in the instant case.[4]
In addition, the United States Court of Appeals for the Ninth Circuit has held that food stamps are not “public assistance payments.” Siemens v. Bergland, 591 F.2d 1263, 1264 (9th Cir.1978). In the Siemens case, recipients of payments under a Comprehensive Employment and Training Act (CETA) program wanted the Secretary of Agriculture to include weekly CETA program payments in calculating their incomes for the purposes of food stamp eligibility. However, a CETA statute provided that the weekly payments were to be “disregarded in determining the amount of public assistance payments under Federal or Federally assisted public assistance programs.” Id. (citing 29 U.S.C. § 821(a)). If food stamps were “public assistance payments,” then the Secretary could not include the CETA payments in the income calculations. If food stamps were not “public assistance payments,” the statute did not prohibit the Secretary from including the payments as income. The Court held that “food stamps are not ‘public assistance payments’ as defined in the CETA statute....” Id.
If food stamps and Medicaid are included in the Virginia statutory phrase “public assistance moneys,” as Hodges urges, *130 Code § 63.2-1908 would then also mean that DCSE could collect from a noncustodial parent the amount of food stamps and Medicaid expended on behalf of his/her child. The first sentence of Code § 63.2-1908 states,
Any payment of public assistance money made to or for the benefit of any dependent child or children or their custodial parent creates a debt due and owing to the Department by the person or persons who are responsible for support of such children or custodial parent in an amount equal to the amount of public assistance money so paid.
(Emphasis added.) In fact, if “public assistance moneys” includes food stamps and Medicaid payments, then DCSE would have a statutory obligation to collect the amount of those forms of public assistance expended on behalf of the dependent child from the noncustodial parent. Otherwise, the exact term, “public assistance moneys,” would be given a different meaning in the same statute. In the first sentence, “public assistance moneys” would mean “TANF payments,” and in the second to last sentence of the statute, the proviso at issue in this appeal, “public assistance moneys” would mean “TANF payments, food stamps and Medicaid assistance.” Considered as a whole, the legislature could not have possibly intended to assign two different meanings to the phrase “public assistance moneys” in the same statute.[5] If the plain *131 meanings of the words are adopted, it must be presumed that the legislature intended to give separate meanings to the phrases “public assistance” and “public assistance moneys” and did not intend merely to incorporate superfluous language. See Burnette, 194 Va. at 788-89, 75 S.E.2d at 484-85.[6]
*132 Defining the phrase to include TANF payments, as opposed to TANF payments, food stamps and Medicaid, provides consistency and gives meaning to every word and phrase within the statute. “When analyzing a statute, we must assume that ‘the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.’ ” Frazier, 27 Va.App. at 135, 497 S.E.2d at 881 (quoting ESG Enters., Inc., 243 Va. at 153, 413 S.E.2d at 644). When the statutory language is clear and unambiguous, then the Court “must give the words their plain meaning.” Crislip v. Commonwealth, 37 Va.App. 66, 71, 554 S.E.2d 96, 98 (2001). “‘Courts are not *133 permitted to rewrite statutes. This is a legislative function.’ ” Barr, 240 Va. at 295, 396 S.E.2d at 674 (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)). “ Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.’ ” Crislip, 37 Va.App. at 71-72, 554 S.E.2d at 98 (quoting Dominion Trust Co. v. Kenbridge Constr., 248 Va. 393, 396, 448 S.E.2d 659, 660 (1994)). Moreover,
“[i]f the comparison of one clause with the rest of the statute makes a certain proposition clear and undoubted, the act must be construed accordingly and ought to be so construed as to make it a consistent whole. If after all it turns out that that cannot be done, the construction that produces the greatest harmony and the least inconsistency is that which ought to prevail.”
Norman J. Singer, Statutes and Statutory Construction § 46:05 (6th ed.2000) (quoting Att’y Gen. v. Sillem, 2 H & C 432, 159 Eng. Repr. 178 (1864)). Interpreting the phrase “public assistance moneys” throughout the statute to exclude food stamps and Medicaid assistance provides the greatest harmony and the least inconsistency.
III. Conclusion
We hold that food stamps and Medicaid assistance are not “public assistance moneys” as contemplated in Code § 63.2-1908. The legislature did not exempt noncustodial parents receiving those forms of public assistance from reimbursing DCSE for moneys expended on behalf of their children. Accordingly, we affirm.

Affirmed.

. We do not agree with the premises of the concurring opinion for several reasons. First, the concurrence urges the Court to decide this case on the ground that the proviso does not apply due to the trial court's finding that Hodges is "not now a noncustodial parent,” a prerequisite to application of the exemption. Neither party questioned that finding, nor did they question the trial court's application or the meaning of "noncustodial parent” as it is used in Code § 63.2-1908 at the three-judge panel stage of these proceedings. See Hodges, 43 Va.App. at 467 n. 1, 598 S.E.2d at 780 n. 1. The Court could not have addressed the noncustodial parent issue at the panel stage because it was not made part of the "questions presented.” See Cirrito v. Cirrito, 44 Va.App. 287, 309, 605 S.E.2d 268, 278 (2004) (noting that arguments not presented in the "questions presented” will not be considered (citing Rule 5A:20(c)-(e))). In an analogous context, we have held that, generally, we will not consider "additional authority on rehearing that could have been presented before the original panel.” Rusty’s Welding Serv., Inc. v. Gibson, 29 Va.App. 119, 124 n. 1, 510 S.E.2d 255, 258 n. 1 (1999) (en banc); see also Coleman v. City of Richmond, 6 Va.App. 296, 297 n. 1, 368 S.E.2d 298, 300 n. 1 (1988). It follows that the Court should not base its decision on grounds not raised at the panel level and not argued by either party. In short, the issue as to whether Hodges is a "noncustodial parent” has been defaulted on appeal. Therefore, we cannot agree with the "narrower grounds” upon which the concurrence rests its opinion.
Second, the concurring opinion's sua sponte interpretation of the meaning of “noncustodial parent” is misplaced. Code § 63.2-1900 *125 defines "noncustodial parent” not in terms of physical custody, but as the "responsible person who is or may be obligated under Virginia law for support of a dependent child or caretaker.” See also 22 VAC § 40-880-10. We are bound by the plain language of the statutory definition of "noncustodial parent.” See Beck v. Shelton, 267 Va. 482, 488, 593 S.E.2d 195, 198 (2004) (holding that courts are bound by the plain meaning of statutory language).
Third, the concurring opinion interprets the phrase "for the period such person or persons are in such status,” Code § 63.2-1908, as applying to both (1) a noncustodial parent, and (2) one who is receiving public assistance moneys. The concurrence states that “[l]f one of these prerequisites is not met (i.e., the individual is not a non-custodial parent or is not receiving public assistance money), then this limited exception does not apply----" Such reasoning fails to properly apply the statutory definitions of "noncustodial parent” and "debt” within the context of the statutes. A "debt” is "the total unpaid support obligation established by ... the payment of public assistance and owed by a noncustodial parent....” Code § 63.2-1900. There is no statutory provision allowing Hodges to change her status from a noncustodial parent to "not a non-custodial parent” once the debt has been incurred. The only status that can change is the time period in which a debt can be incurred or the time period in which an obligation must be repaid. Therefore, the "period” to which the proviso refers is the period in which the noncustodial parent is "the recipient of public assistance moneys for the benefit of minor dependent children.” Code § 63.2-1908. Immunity from paying that debt does not depend on whether the noncustodial parent takes physical custody of the child. The noncustodial parent has debt immunity only when she is receiving public assistance moneys for the benefit of her dependent child.

. "Cash” in this context should also be understood to include other forms of universally accepted fungible currency, such as checks. The dissent charges that we have "adopted the most narrow and restrictive meaning of the word 'moneys,' in disregard of the 'everyday, ordinary’ meaning of the word in the context of the legislature’s intent.” But, in fact, the definition used by the dissent supports our analysis. The dissent relies on the definition of "money[s]” from Black’s Law Dictionary 1021 (7th ed.1999): "assets that can easily be converted to cash.” That meaning requires fungibility. As we point out below, food stamps and Medicaid assistance are not fungible, nor are they assets that can legally be converted to cash. Therefore, we do not agree that our meaning of moneys ignores the "everyday, ordinary” understanding of the word.

. 7 U.S.C. § 2024(b) details the fines and prison terms that may be levied against an individual convicted of the unauthorized use, transfer, acquisition, alteration, or possession of food stamp coupons or authorization cards. Buying or selling food stamps for any purpose other than that provided in 7 U.S.C. § 2011 et seq., which is anything other than the sale or purchase of eligible food items from approved retail food stores, is an unauthorized use. See, e.g., Kim v. United States, 121 F.3d 1269 (9th Cir.1997).

. The Washington statute at issue read, in relevant part, that "the payment of public assistance moneys for the benefit of a dependent child created a debt owed to the state by those parents responsible for the child’s support,” and, ”[d]ebt under this section shall not be incurred by nor at any time be collected from a parent or other person who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status.” Gerlack, 612 P.2d at 384 n. 2. That statute has since been amended. See Wash. Rev.Code §§ 74.20A.030 & 74.20A.270 (2004).

. We also note that the second and third sentences of Code § 63.2-1908 support the interpretation that the phrase "public assistance moneys” does not include food stamps and Medicaid assistance. If food stamps and/or Medicaid assistance are being received for the benefit of a child in the household who is not receiving TANF payments, the parent is not obligated to pay back the amount of the food stamps/Medicaid assistance. The obligation created is only for the amount of moneys paid, i.e., TANF payments or other types of cash assistance. Those sentences state,
However, if a custodial parent receives TANF payments for some of the custodial parent's dependent children pursuant to § 63.2-604, the custodial parent shall receive the total amount of support collected for the children for whom no TANF benefits are received. Such support payments shall not create a debt due and owing to the Department and the value of such payments shall not be counted as income for purposes of TANF eligibility and grant determination.
*131 Moreover, if the intent of the proviso is, as Hodges asserts, to prevent the state from collecting any welfare debt from families with limited financial resources, the legislature would not allow DCSE to offset child support payments from the noncustodial parent against the public assistance moneys being paid. DCSE is not permitted to keep child support payments for children who are not receiving TANF or other cash assistance, even if food stamps and/or Medicaid assistance is being paid for their benefit.

. The dissent contends that the meaning of § 63.2-1908 should be ascertained by viewing it in relation to Code §§ 63.2-1909 and -1910. While those statutes fall successively under Subtitle V, Administrative Child Support, Title 19, Child Support Enforcement, Article 2, Public Assistance, they are not part of a larger "act." But cf., Moreno v. Moreno, 24 Va.App. 190, 197, 480 S.E.2d 792, 796 (1997) (“When the General Assembly uses different terms in the same act, it is presumed to mean different things____'In construing a statute the court should seek to discover the intention of the legislature as ascertained from the act itself when read in the light of other statutes relating to the same subject matter.’ ” (quoting Campbell v. Commonwealth, 13 Va.App. 33, 38, 409 S.E.2d 21, 24 (1991) (emphasis added))).
In any event, if you apply Code § 63.2-1909 to our analysis, the treatment of the phrases "public assistance” and “public assistance moneys” is consistent with our interpretation of those phrases. Code § 63.2-1909 states that anyone who receives public assistance on behalf of a child is deemed to have assigned to DCSE any rights to any support payments up to the amount of public assistance moneys expended. It also allows DCSE to collect any outstanding support obligation from a noncustodial parent up to the amount of moneys expended on behalf of a child until that debt is repaid. The debt consists of the amount of moneys expended, not the amount of assistance provided.
In addition, although the statutes all concern obligations created as a result of the payment of federally funded public assistance moneys on behalf of a child, the subject matter of each statute is different. Code § 63.2-1908 addresses TANF debt; Code § 63.2-1909 addresses the assignment of child support obligations; and Code § 63.2-1910 addresses foster care maintenance payments debt. The Federal code requires states receiving Federal TANF block grants to include a process for an assignment of support rights as a condition of providing assistance to a family. 42 U.S.C. § 608(a)(3); see generally 42 U.S.C. § 601 et seq. Support rights secured by a state as a condition for receiving TANF assistance (pursuant to Title IV, Part A of the Social Security Act) or on behalf of a child receiving foster care maintenance *132 payments (pursuant to Title IV, Part E of the Social Security Act) creates an obligation in the person responsible for supporting the child. 42 U.S.C. § 656(a)(1). Such obligations are to be collected by the state, 42 U.S.C. § 656; however, the federal government does not prescribe the process under which those obligations are to be collected. 42 U.S.C. § 617. Because the Commonwealth is required by the federal government to collect debt created by TANF/support payments and foster care maintenance payments, the General Assembly enacted statutes to meet those federal requirements. In doing so, the legislature enacted separate statutes for purposes of collecting TANF/support debt, Code § 63.2-1908, and foster care maintenance payments, Code § 63.2-1910. The legislature could have elected to enact one statute to cover both types of debt. However, it chose to treat TANF/support debt separately, and differently, from foster care maintenance payments debt. In the case of TANF, the legislature allows the noncustodial parent an exemption from paying back the debt while she is receiving money payments on behalf of the child. In the case of foster care maintenance payments, the legislature allows the noncustodial parent an exemption while she is receiving any kind of public assistance for the benefit of the child. Without enumerating them, we note that the eligibility requirements for receiving TANF assistance and the eligibility requirements for receiving foster care maintenance payments are different. Therefore, the intent of the legislature may have been to treat the collection of the different types of debt under each program differently. There is no requirement, federal or otherwise, that the General Assembly enact congruent provisos in the two statutes.
Simply put, in each of the statutes, Code §§ 63.2-1908, -1909, and - 1910, if any kind of public assistance is provided on behalf of a child, the noncustodial parent must pay back moneys expended for the benefit of the child, unless the noncustodial parent is exempted. We must presume that the legislature chose its words with care and that each of the words has a specific meaning and is not superfluous. ESG Enters., Inc., 243 Va. at 153, 413 S.E.2d at 644; Burnette, 194 Va. at 788-89, 75 S.E.2d at.485.