COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, AtLee and Senior Judge Clements
Argued at Fredericksburg, Virginia

I DRIVE SMART TOO, INC. AND
   TOM PECORARO
                                                MEMORANDUM OPINION[*] BY
v.         Record No. 0975-21-4             JUDGE RICHARD Y. ATLEE, JR.
                                                      JULY 26, 2022
COMMONWEALTH OF VIRGINIA,
   DEPARTMENT OF MOTOR VEHICLES

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dontae L. Bugg, Judge

J. Chapman Petersen (Federico J. Zablah; Chap Petersen &
Associates, PLC, on briefs), for appellants.

Christian A. Parrish, Assistant Attorney General (Mark R.
Herring,[1] Attorney General; Donald D. Anderson, Deputy Attorney
General; Julie M. Whitlock, Section Chief/Senior Assistant
Attorney General, on brief), for appellee.

Appellants I Drive Smart Too, Inc. and Tom Pecoraro[2] (collectively, "Drive Smart")

appeal an order from the Circuit Court of Fairfax County affirming the Department of Motor

Vehicles' ("DMV") assessment of a $1,000 civil fine against Drive Smart for operating a

"computer-based driver education course[]" without agency approval, in violation of Code

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] I Drive Smart Too, Inc. is a Virginia corporation offering driving education courses.
Tom Pecoraro is the President of I Drive Smart Too, Inc.

§ 46.2-1702. DMV assessed this fine pursuant to the agency's powers under Code § 46.2-1706.[3] For the following reasons, we reverse.

## I. BACKGROUND

Drive Smart is a Virginia corporation that offers live driver education courses, licensed as a Class B driving school. *See* 24 VAC 20-121-10 (defining "Class B" as the designation for driver training schools that "provide[] training in the operation of any type of motor vehicle other than motorcycles and commercial motor vehicles"); 24 VAC 20-121-200 (outlining curriculum requirements for Class B schools). Since 2009, Drive Smart has offered live, in-person, classroom-based instruction (as well as "behind the wheel" instruction), with Drive Smart holding the classroom instruction portion in area high schools. In March 2020, in response to the growing awareness of the dangers of COVID-19, federal and state governments took various measures to curtail the spread of the virus. In Virginia, this included the declaration of a state of emergency and the issuance of multiple executive orders.[4]

On March 23, 2020, former Governor Northam issued Executive Order 53 to address the "ongoing threat" and to "mitigate the impacts of th[e] virus." The order mandated the "[c]essation of all in-person instruction at K-12 schools." This meant that Drive Smart could no longer teach the classroom portions of its courses in-person, or else it risked committing a Class 1 misdemeanor. *See* Executive Order No. 53 (2020); Code § 44-146.17 (allowing the Governor to impose such a sanction via executive order).

---

[3] Under this section, "the Commissioner may assess a civil penalty not to exceed $1,000 for any violation of any provision of this chapter or any regulation promulgated thereunder."

[4] Governor Northam issued the first of these, Executive Order 51, on March 12, 2020, stating that the "anticipated effects of COVID-19 constitute a disaster" and declaring a state of emergency pursuant to the Virginia Emergency Services and Disaster Law ("Virginia Emergency Law"), Code §§ 44-146.13 through 44-146.29:3.

Even prior to the issuance of Executive Order 53, Drive Smart recognized the looming threat to the health and safety of its instructors, staff, and students, along with the existential peril to its business model. At this point, schools were already closing and moving to remote learning or considering the possibility of doing so. Because DMV licensed Drive Smart as a classroom provider, not a "computer-based driver education provider,"[5] Code § 46.2-1702, Drive Smart sent DMV a letter on March 12, 2020, in which it outlined its concerns and sought guidance from the agency. The letter included a detailed proposal for how Drive Smart might move forward with remote, live, interactive classroom instruction without compromising any of DMV's compliance safeguards.[6]

DMV promptly responded that it was "currently evaluating emergency training options and will be able to provide guidance to everyone as it becomes available." Sometime in the spring of 2020, Drive Smart began teaching its classes, in which students were already enrolled and had paid for, remotely via Zoom. DMV subsequently sent letters, dated May 28 and July 2, to all Class B driving schools, communicating that schools needed a separate "computer-based driver education provider" license to conduct classes via remote learning.

On July 14, 2020, DMV sent Drive Smart notice that DMV had assessed Drive Smart a civil penalty of $1,000 for conducting classes remotely without having prior DMV approval as a provider of "computer-based driver education courses." Such certification includes an annual fee of $100. Drive Smart requested a hearing to dispute this penalty, which was held remotely

---

[5] Drive Smart had applied to be certified as a "computer-based driver education provider" in the past but abandoned the application. It moved forward with this application, and Drive Smart received approval to operate as a "computer-based" driving school on August 19, 2020.

[6] This proposal included explanations for how Drive Smart would continue to verify each student's identity, record attendance, prevent cheating on tests, and ensure account security, among other compliance concerns, all while ensuring the curriculum and instructor interaction remained faithful to the in-classroom model.

on October 15, 2020.[7]  The DMV hearing officer issued a final hearing decision upholding the

fine, and Drive Smart appealed to the circuit court.  Following a hearing in April 2021, the

circuit court issued a final order affirming DMV's determinations.  This appeal followed.

## II. ANALYSIS

Drive Smart argues that the circuit court erred in finding that:  (1) Drive Smart violated

Code § 46.2-1702, (2) former Governor Northam's Executive Order 53 did not justify or

necessitate Drive Smart's actions, and (3) the "necessity defense"[8] was inapplicable.  Because

we agree with the first contention, we do not reach Drive Smart's additional arguments.

### A.  *General Principles and Standards of Review*

"On appeal of an agency's determination of law, the deference accorded depends on the

law being interpreted."  *Commonwealth ex rel. Va. State Water Control Bd. v. Blue Ridge Env't

Def. League, Inc.*, 56 Va. App. 469, 480 (2010).  The "dichotomy [between questions of law and

fact], however, is somewhat a fiction, is too simplistic, and involves the difficulty of drawing

lines between legal and factual issues.  That difficulty arises because many issues are more

accurately described as mixed questions of law and fact."  *Johnston-Willis, Ltd. v. Kenley*, 6

Va. App. 231, 243 (1988).  "Thus, the degree of deference afforded an agency decision depends

---

[7] At this point, and in fact throughout large stretches of this dispute, DMV itself was conducting business remotely.

[8] Drive Smart advances a novel argument that the "necessity defense," a common law principle employed in the context of criminal cases, applies here, because the risks of COVID-19 and the mandates of Executive Order 53 necessitated Drive Smart's actions in order for the company to continue lawfully operating.  In the criminal context, the necessity defense requires "(1) a reasonable belief that the action was necessary to avoid an imminent threatened harm; (2) a lack of other adequate means to avoid the threatened harm; and (3) a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm."  *Edmonds v. Commonwealth*, 292 Va. 301, 306 (2016) (quoting *Humphrey v. Commonwealth*, 37 Va. App. 36, 45 (2001)).  We decline the invitation to address this issue because it is unnecessary to our resolution of this appeal.

upon not only the nature of the issue, legal or factual, but also upon whether the issue falls within the area of 'experience and specialized competence of the agency.'" *Id.* (quoting Code § 9-6.14:17 (1988)[9]). "An agency's 'legal interpretations of statutes' [are] accorded no deference because '[w]e have long held that "pure statutory interpretation is the prerogative of the judiciary," and thus, Virginia courts "do not delegate that task to executive agencies."'" *Blue Ridge Env't Def. League*, 56 Va. App. at 481 (second alteration in original) (quoting *The Mattaponi Indian Tribe v. Commonwealth, Dep't of Envt'l Quality*, 43 Va. App. 690, 707 (2004)). In other words, "pure statutory interpretation is the prerogative of the judiciary." *Sims Wholesale Co. v. Brown-Forman Corp.*, 251 Va. 398, 404 (1996).

### B. *"Computer-based" Courses and Education Providers under the Code*

Under Code § 46.2-1702, "only those driver training schools that are licensed as computer-based driver education providers shall be authorized to administer computer-based driver education courses." A "computer-based driver education course" is defined as "the classroom portion of driver education offered by a computer-based driver education provider through the internet or other electronic means approved by the Department whose content and quality is comparable to that of courses offered in the Commonwealth's public schools." Code § 46.2-1700.

Here, the crux of the disagreement between the parties is whether the live, videocall-based instruction Drive Smart offered in response to the risks of in-person instruction, the lack of classroom access, and the mandates of Executive Order 53 was "computer-based" within the meaning of the statute. Under DMV's interpretation, *any* instruction involving the use of a computer is "computer-based." We disagree.

---

[9] This standard is now articulated in Code § 2.2-4027. *See* 2001 Va. Acts ch. 844 (renumbering Code sections).

1. The Meaning of "Computer-Based" is not within DMV's Specialized Competence

Whether Drive Smart's modified online instruction model is "computer-based" "involves a question of statutory interpretation." *Sims Wholesale*, 251 Va. at 404. It "does not involve 'the substantiality of the evidential support for findings of fact,' . . . which requires great deference because of the specialized competence of the agency." *Id.* (quoting an earlier version of Code § 2.2-4027(iv)). "Instead, when, as here, the question involves a statutory interpretation issue, 'little deference is required to be accorded the agency decision' because the issue falls outside the agency's specialized competence." *Id.* (quoting *Johnston-Willis*, 6 Va. App. at 246). The meaning of "computer-based" under Code § 46.2-1702 is not something within DMV's area of specialized competence. *Compare Vasaio v. Dep't of Motor Vehicles*, 42 Va. App. 190, 198 (2004) (determining whether a motorcycle was a "motor vehicle" within the meaning of statute was within DMV's specialized competence), *and Groome Transp., Inc. v. Va. Dep't of Motor Vehicles*, 27 Va. App. 682, 695-96 (1998) (finding DMV has specialized competence to determine whether to grant a "certificate of public convenience and necessity" as a Class A special or charter party carrier), *with Sims Wholesale*, 251 Va. at 404 (determining whether "good cause" exists for unilaterally terminating or cancelling agreement under Virginia's Wine Franchise Act was matter of statutory interpretation and was not within specialized competence of Alcoholic Beverage Control Board), *and Va. Dep't of Health v. Kepa, Inc.*, 289 Va. 131, 139 (2015) (determining it was an issue of statutory interpretation, not in the specialized competence of VDH, to determine whether a hookah lounge was a restaurant or a retail tobacco store).

2. What Qualifies as "Computer-Based" Instruction

"The Virginia Supreme Court has long held that '[w]hen analyzing a statute, we must assume that 'the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute.'" *Hodges v. Commonwealth, Dep't of Soc. Servs., Div. of*

*Child Support Enf't ex rel. Comptroller of Va.*, 45 Va. App. 118, 126 (2005) (*en banc*) (alterations in original) (quoting *City of Va. Beach v. ESG Enters., Inc.*, 243 Va. 149, 153 (1992)).  "Virginia courts are bound, where possible, to give meaning to every word of a statute." *Id.*  "It is the duty of the courts to give effect, if possible, to every word of the written law."  *Id.* (quoting *Moyer v. Commonwealth*, 33 Va. App. 8, 35 (2000) (*en banc*)).  "A word or clause contained in a statute may only be rejected as surplusage if it 'appears to have been inserted through inadvertence or mistake, and which is incapable of any sensible meaning,' or is otherwise repugnant to the rest of the statute."  *Id.* at 127 (quoting *Burnette v. Commonwealth*, 194 Va. 785, 788 (1953)).  "[N]o part of an act should be treated as meaningless unless absolutely necessary."  *Id.* (alteration in original) (quoting *Garrison v. First Fed. Sav. and Loan Ass'n of S.C.*, 241 Va. 335, 340 (1991)).

The relevant code section provides that "only those driver training schools that are licensed as computer-based driver education providers shall be authorized to administer computer-based driver education courses."  Code § 46.2-1702.  The General Assembly chose to include in the definition of a "computer-based driver education course" that it be offered "by a *computer-based* driver education provider *through the internet or other electronic means*."  Code § 46.2-1700 (emphasis added).  If any driver's education involving "the internet or other electronic means" is "computer-based," the inclusion of the modifier "computer-based" to "computer-based driver education provider" is rendered superfluous.  *See Hodges*, 45 Va. App. at 126-27.  "Computer-based" cannot encompass everything involving *any* use of a computer or the internet.  A more reasonable inference is that "computer-based" content is content generated by, or controlled through, the use of a computer, not simply anything involving a computer's use. In other words, for Code § 46.2-1702 and Code § 46.2-1700 to operate harmoniously, the definition must refer to the course content, rather than merely the manner of delivery.  For

example, consider the following as some—although not a comprehensive list of—examples of what might qualify as "computer-based" content: various classes offered via online modules, CDROM, or downloaded content (which are generally self-paced and not guided by live instruction).

Moreover, if, as DMV contends, any instruction involving the use of a computer is "computer-based," this leads to absurd results. For example, DMV's proposed interpretation would mean a class taking place in-person with live instruction, but with students taking notes and tests on laptops or the instructor using Powerpoint or other computer aids, would be "computer-based" instruction. We cannot endorse this definition. *See Hodges*, 45 Va. App. at 126-27 (We must "give meaning to every word of a statute" and "no part of an act should be treated as meaningless unless absolutely necessary.").

Here, Drive Smart offered remote classes that were live and interactive, with the sole difference being that the students and instructor were not in the same room. The instructor was teaching live and was available for student questions in real time. The internet (in this case, Zoom) was simply the delivery method, not the source of the course content or instruction. The General Assembly, through the words it "chose, with care," *id.* at 126, plainly intended that "computer-based" instruction was meant to be a different product, not just live and interactive instruction using videoconferencing.[10] Accordingly, because Drive Smart did not operate a

---

[10] Furthermore, "[w]here the agency has the statutory authorization to make the kind of decision it did and it did so within the statutory limits of its discretion and *with the intent of the statute in mind*, it has not committed an error of law . . . ." *Williams v. Commonwealth, Real Est. Bd.*, 57 Va. App. 108, 121 (2010) (second alteration in original) (emphasis added) (quoting *Johnston-Willis*, 6 Va. App. at 242). Although DMV undoubtedly has the statutory authority to regulate driver education courses, we cannot say that its actions here have any reasonable relationship to the intent of the statute. There is no allegation or evidence that Drive Smart's manner of teaching inflicted or imposed any harm, danger, or deficiency. Rather, it was a reasonable adjustment to conform to the era-defining challenges of COVID-19 and the mandates of Executive Order 53.

"computer-based" driver education course when it moved its in-person classes to online videoconferencing, it did not violate Code § 46.2-1702.

### III.  CONCLUSION

The circuit court erred in affirming DMV's finding that Drive Smart had, in fact, violated Code § 46.2-1702 and operated as a "computer-based" driver education provider when it shifted its instruction to live online videoconference, when the course content, instructor availability, and class interaction were otherwise unaltered.  Accordingly, we reverse and remand to the circuit court for entry of an order consistent with this Court's ruling.

*Reversed and remanded.*